# Maurer *against* Mitchell.

A contract of compromise between the reputed father and the mother of an illegitimate child, by which the former agreed to pay a stipulated sum for the lying-in expenses of the mother and for raising the child, is not founded upon such an illegal consideration as will avoid it: nor will the subsequent death of the child relieve the father from the payment of any part of the stipulated sum.

ERROR to the Common Pleas of *Clinton* county.

Peggy Mitchell against Daniel Maurer. This was an action of debt, in which the following special verdict was found:

We the jurors empanelled and sworn in the above case, do find that, on the 13th day of September 1841, the defendants, Daniel Maurer and Jacob Maurer, did execute and deliver to the plaintiff, Peggy Mitchell, their sealed note or single bill for the sum of $50, payable the 1st September 1842, being the same single bill on which this action is founded, and which is in evidence. They further find, that at the same time the said single bill was executed and delivered, articles of agreement were entered into by the said Daniel Maurer and Peggy Mitchell, bearing even date with said note, and which fully disclose the consideration of said sealed note or single bill, and which said articles are in the words and figures following, to wit:

Commonwealth *v.* Daniel Maurer. Fornication and bastardy, on the oath of Peggy Mitchell. In the Court of Quarter Sessions of Clinton county.

It is agreed between Peggy Mitchell, the plaintiff in this cause, and Daniel Maurer, the defendant, that the said Maurer shall pay to the said Peggy the sum of $250, good and lawful money, for her lying-in expenses and the raising the female child with which she charges the said Maurer of being the father; which said $250 is to be paid as follows: $50 in hand, $50 on the first day of September 1842, and $50 on the first day of September 1843, and $50 on the first of September 1844, and $50 on the first of September 1845; for which payments the said Daniel is to give his notes, with good security; and in consideration thereof the said Peggy Mitchell doth agree firmly to discharge and forever acquit the said Daniel Maurer, his heirs and assigns, from all charges, demands or suits for or on account of the above prosecution; and for all time to come she is not to make further demands of said Maurer for raising and clothing said child, hereby agreeing to take the above specified sum in full discharge of the premises aforesaid; and he, the said Maurer, is to pay the costs that have

[Maurer v. Mitchell.]

accrued in said suit.   Witness our hands and seals, the 13th day of September 1841.

DANIEL MAURER, [L. s.]

Present—Jos. F. QUAY.          PEGGY MITCHELL, [L. s.]

And we the jurors aforesaid do further find that on the same 13th of September 1841, the said Daniel Maurer paid to said Peggy Mitchell the sum of $50, in discharge of the first payment mentioned in said articles of agreement, and made the several notes therein mentioned, with Jacob Maurer as his surety, and that the note in suit is one of the said notes, to wit, the one that was to fall due on the 1st September 1842.   And we do further find that the bastard child referred to in said articles of agreement was born on the 13th day of June 1841, and died on the 11th June 1842; and that before the note in suit and the said articles of agreement were executed, the said Peggy Mitchell had charged the said Daniel Maurer on oath with being the father of the said child, and had instituted a public prosecution against him for fornication and bastardy, which was depending in the Court of Quarter Sessions of Clinton county at the execution of said papers, and still is; that no bill of indictment has ever been preferred or found against said Maurer, and that the said prosecution has not been proceeded in or dismissed from the record in any manner.   And the jurors aforesaid do further say, that they are ignorant in point of law, on which they ought, upon these facts, to find the issue; that if, on the whole matter, the court shall be of opinion that the issue is proved for the plaintiff, they find for the plaintiff accordingly the sum of $56 dollars debt.

The court below (WOODWARD, President) rendered a judgment for the plaintiff.

*Linn* and *Hale*, for plaintiff in error, contended that the consideration was illegal, and cited 13 *Serg. & Rawle* 35; *Leigh's N. P.* 23; 1 *Chipman* 137: that the death of the child within so short a period after the contract was entered into relieved the defendant *pro tanto* from his obligation to pay.   5 *Eng. C. L. Rep.* 1; 13 *Eng. C. L. Rep.* 33; 5 *Esp.* 142; 1 *Campbell* 396.

*Armstrong*, contra, argued that the consideration of the compromise was valid, and cited 2 *Rawle* 24; 3 *Serg. & Rawle* 327; 11 *Serg. & Rawle* 155, 164; 2 *Penn. Rep.* 531.

The opinion of the Court was delivered by

GIBSON, C. J. — It is pretty clear that the consideration of the contract was to be a cessation of voluntary prosecution by the mother, for it is incredible that the father would have been so far actuated by a sense of moral duty as to execute the articles and the single bills, had it been understood that she might continue to

pursue him. She agreed to release him from " all charges, demands, or suits for or on account of the prosecution;" but what charges, demands or suits could she have on account of it, except the prosecution itself? She could give effect to her agreement only by ceasing to press her accusation; and the question is, whether that alone would make the contract of the accused illegal. There certainly was a time when fornication and bastardy stood on the foot of every other offence, and when an agreement to stifle the prosecution of it would have been an illegal consideration. Originally the principal object attempted by the punishment of it was the correction of the offender, the penalty annexed to it being stripes at the whipping-post, or a fixed fine at the election of the convicted; and on this footing it stood, as it was placed by the Act of 1705, till the infamous alternative was commuted by the Act of 1790. Still the pecuniary penalty remained fixed till the Act of 1806 empowered the courts to moderate specific fines; after which the support of the child, where there was one (and no one took the pains to prosecute where there was not), came to be viewed as the substantial, though not the formal, end of the prosecution; and the fine was, in practice, only nominal. Prompted by the general sentiment, the Legislature authorized the Attorney General, by an Act passed in 1819, to enter a *nolle prosequi* in prosecutions for fornication and bastardy " *on agreement between the parties*" after indictment found. Thus the offence, like assault and battery, with which it was associated in that statute, became little more than a private wrong; and when the Legislature authorized the parties to treat it as such between themselves, the contract certainly became legal, so far as they were individually concerned. I therefore am bound to dissent from the dictum of my late learned and able brother, Mr Justice Duncan, in *Shenk* v. *Mengle*, (13 *Serg. & Rawle* 26,) that a contract founded on the abandonment of a prosecution for fornication and bastardy is illegal and void. The parties have certainly a right to let the matter drop, where the Attorney General consents to let them do so; and when the public interest does not forbid it, he may relieve them from the burthen of prosecuting even on compulsion. Surely, then, a contract which looks to that contingency is lawful, at least in the first instance. It may be that a private agreement to hold back, being inconsistent with public policy whenever the prosecution is to go on, would depend for its ultimate effect on the event of his determination; about which I intimate no opinion. In this case, it is true, there has been no bill found on which the Attorney General could exercise his power; but none has been presented, and the prosecution is virtually at an end. The Act of 1819 was not brought into the view of the court in *Shenk* v. *Mengle*, probably because the professional mind had not become familiar with it, else the legality of the contract would not have been questioned.

[Maurer v. Mitchell.]

Touching the other point of defence, it is sufficient to say that the contract was entire and indivisible. A gross sum was agreed to be given for the relinquishment of the mother's claim, whatever it might be; and though it was to be paid piecemeal, it was not to be graduated to the quantum of the maintenance actually furnished. The mother took upon herself the burthen of the whole; and the chances, on the one side and on the other, must be supposed to have been estimated in the concoction of the contract. The father is therefore not entitled to any deduction by reason of the death of the child.

Judgment affirmed.