## Ammon's Appeal : Campbell's Estate.

1. A legacy was bequeathed to Campbell by his mother; he brought suit against her estate for a claim against her—subsequently he assigned his legacy, it being all his estate, for the benefit of his wife, there were then some debts against him; afterwards judgment in the suit was recovered against him for costs. The administrator, in his administration account, which was confirmed, took credit for the costs paid by him in the suit. *Held*, that assignment was void as against the costs and the other debts, and that they should be paid from the legacy.

2. A conveyance which denudes a husband of all or the greater part of his property is more than a reasonable provision for his wife ; a husband's probable necessities as well as his debts are to be considered.

3. Under a decree avoiding a voluntary conveyance for a wife, there is no distinction between creditors at the time of the conveyance, and those becoming so afterwards ; the former have no priority over the latter.

November 15th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Beaver county :* No. 152, to October and November Term 1868.

The proceedings in this case were upon the distribution of the estate of Rebecca Campbell, deceased, in the hands of Hugh B. Anderson, administrator *d. b. n. c. t. a.*

The decedent died in October 1862, and, by her will, directed her estate to be divided amongst her six children, Alfred and Charles, two of them, each to receive $100 more than the others. On the 18th of February 1860, C. H. Hays obtained a judgment against Alfred Campbell, on which an attachment execution was issued, Mrs. Campbell's administrator being garnishee; the judgment against the garnishee was $11.90 and costs $2.93. On the 1st of December 1862 Alfred gave his note to the administrator for a vendue bill amounting to $4.73, payable in nine months : on the 17th of March 1863 Alfred commenced an action of assumpsit against his mother's administrator, in which there was a judgment for defendant for costs $239.75, which the administrator paid out of the estate, and $42.06 docket costs. The administrator issued an attachment execution for the costs, and laid the attachments on the legacy in his own hands.

By deed dated 24th of June 1863, and executed in the next October or November, Alfred assigned to James M. Phillis, " in trust for the sole use and benefit of my wife, Elvira Campbell, her heirs and assigns, all and every legacy, or legacies, left to me by the same Rebecca Campbell," &c. ; the assignment was put into the possession of the wife and remained there.

The administrator's account was confirmed at November Term 1866 ; it showed a balance of $2324.04 in his hands, and E. B. Daugherty, Esq., was appointed auditor to make distribution.

[Ammon's Appeal.]

The principal question before the auditor was as to the validity of the assignment of the legacy to Alfred's wife.

The auditor found that the above debts were due by Alfred, and reported that there was evidence before him that the wife had received $30 to $35 from her father's estate, which she had given to her husband; that she had sold a horse for $75, which she gave to him; that she had given him $15, and also that she held against him a note for $100, the consideration of which did not appear. After referring to the sources from which the other money came, the auditor, in a well-considered report (which the reporter regrets that he cannot give in full), proceeded:—

"It is clear that the only separate estate which Elvira Campbell had was the $30 to $35 referred to as coming from her father's estate; and since, in any event, she will receive, under the assignment, a much larger sum than that, which was her own separate property or money, it is a matter of no importance whether that amount was given to her husband or not.

"For the purposes, then, of this distribution, it is manifest that the assignment was not founded upon sufficient consideration, but may at least, outside the $30 to $35, be considered as voluntary.

"In this view, can it then be sustained? The rules governing post-nuptial settlements would seem to be:—

"1. That when fairly made by a husband not indebted at the time, the settlement will be sustained.

"2. When the husband is actually indebted, he must retain such amount of his estate as would be sufficient to pay his debts, and answer the reasonable probabilities of the future.

"3. The settlement must not be for more than a reasonable provision for the wife, and the reasonableness thereof is determined by the whole amount of his estate.

"4. In any event, to be good against future creditors, he must retain, at the time of the settlement, sufficient estate to answer the probabilities of the future.

"5. That where a husband gives to his wife *all* his available means, retaining little or nothing to answer his own, or the demands of future creditors, the provision is unreasonable and void as against such creditors.

"6. When a settlement fairly made, and being in conformity with the foregoing rules, is attacked by creditors whose debts accrued after its making, on the ground of fraud, such fraud must be proved.

"7. Where the debts are contracted after a proper settlement is made, in conformity to above rules, such creditors attacking the same, must show that the intent to defraud future creditors existed at time of making." * *

He referred to the testimony on the question of Alfred's pecuniary condition and found: "That at the time of the assignment

by Campbell to his wife, and ever since, he had not, and has not since had, any property or estate out of which then existing or since contracted debts could be made; that when he executed said paper, it was not a reasonable provision for his wife, as compared with what he retained, but was in effect, so far as creditors then existing or prospective were concerned, a transfer of his entire available means, and indeed the only fund out of which collection would be possible. The auditor, therefore, is of opinion, that so far as the claims above stated are affected by the assignment, it is void, for the reasons stated." * * *

He then reported that the claims referred to should be allowed out of Alfred's share of his mother's estate.

" The remaining portion of Alfred Campbell's legacy is awarded to James M. Phillis, trustee, for the use of Elvira Campbell, under the assignment.

" In arriving at the conclusion above stated, to wit: That the assignment is invalid as against the claims stated, the auditor does not go into the intent of Campbell at the time it was made, but puts it on the ground, that in view of his circumstances at the time, he had nothing available left; that the Hays judgment was due and payable; that the suit upon which the costs subsequently accrued was *then* commenced; in view, then, of these, as well as the general facts in the case, as said before, the deduction is made that as a matter of law the paper is void as against the claims referred to." * *

The auditor found that Alfred's share was     $478.95
From which he deducted:—
" Defendant's bill of costs in No. 10, June T.
1863,  .  .  .  .  .  .  . $239.75
    Record bill, to be paid to prothonotary,  .   42.06
    Costs of attachment, No. 28, March T. 1866,   5.01
    C. H. Hays' judgment *v.* Adm'r., Garnishee,   17.16
    Note to administrator,  .  .  .  .   4.73
                          —— 308.71

And awarded the balance,                      $170.24"
to J. M. Phillis, trustee of Elvira Campbell.

Exceptions to the report of the auditor were filed by Phillis, the trustee:—

1. In holding that the assignment was void as against the costs in the case of Alfred Campbell against the administrator of Rebecca Campbell.

2 and 3. In not awarding the whole amount of the legacy without any deduction, except the debts due C. H. Hays and H. B. Anderson, administrator, originally for $4.73.

Judge Acheson, in delivering the opinion of the court on the exceptions, said: * *

[Ammon's Appeal.]

" It has been claimed that these costs must be regarded as a subsisting debt prior to the date of the transfer, the suit having been brought, and that the pendency of the litigation is evidence bearing upon the honesty of the assignment.

· " We cannot regard these costs as a subsisting liability from the commencement of the action, nor can we look upon the legal controversy as sufficient of itself to warrant the conclusion that a fraud was intended. It is true, that litigation is a somewhat ' hazardous business,' but the inference, that because Alfred Campbell was attempting to collect a claim against the estate, he anticipated defeat, and was placing his property beyond reach for costs, strikes us as unauthorized. Fraud must be proved, and cannot be presumed."   *   *   *

" Notwithstanding the commendable care taken by the auditor, in the examination of the law and facts surrounding this transfer, we are constrained to determine that,. as to subsequent creditors, actual fraud must be proved, and that the evidence falls short of establishing it. If actual fraud was charged, it should have been tried in the attachment proceeding, wherein the administrator attached the money in controversy in his own hands. But instead of this, abandoning his attachment he has settled his administration account, and the question is raised on the distribution of the estate."

The court corrected the finding of the auditor by allowing from Alfred's share the vendue note, $4.73, and the judgment in favor of C. H. Hays, $17.16, and awarding the balance of the legacy, $417.12, to J. M. Phillis, trustee, &c.

The other distributees appealed and assigned the decree of the court for error.

*S. B. Wilson* (with whom was *H. Rice*), for appellants.—A husband cannot make a voluntary settlement on his wife which is not in proportion to his circumstances and not hurtful to his creditors : Coates *v.* Gerlach, 8 Wright 43 ; Wilson *v.* Howser, 2 Jones 109 ; Larkin *v.* McMullin, 13 Wright 29 ; Story's Eq. J., § 1, 374 ; Woolston's Appeal, 1 P. F. Smith 452. The estate of the decedent was not concluded in a question of distribution by the credit for the costs taken in the administration account : Bull's Appeal, 12 Harris 288.

*B. B. Chamberlin*, for appellee.—The confirmation of the administration account was conclusive as to the claim of the estate for costs : Bull's Appeal, *supra ;* Wallace *v.* Keyser, 1 P. F. Smith 497 ; McClintock's Appeal, 5 Casey 361 ; Thompson's Appeal, 6 Wright 357, show that the relation of the parties was fixed at the death of the testator. The other debts were small debts, not of the character from which legal fraud is inferred : Thompson *v.*

Dougherty, 12 S. & R./456 ; Sexton *v.* Wheaton, 8 Wheaton 229 ; Chambers *v.* Spencer, 5 Watts 408. Since the Married Woman's Act of 1848, an obligation to a wife for money does not imply fraud : Williams' Appeal, 11 Wright 310. The interest is the controlling element : Larkin *v.* McMullin, 13 Wright 34 ; Mullen *v.* Wilson, 8 Id. 417 ; Reid *v.* Gray, 1 Id. 510 ; Snyder *v.* Christ, 3 Id. 506.

The opinion of the court was delivered, January 3d 1870, by

READ, J.—In this case the auditor appointed by the Orphans' Court made a very able report, which we have examined with great care and attention. Alfred Campbell, one of the legatees of Rebecca Campbell the decedent, made a voluntary assignment of his legacy to a trustee for the use of his wife, Elvira Campbell. This instrument was dated 24th June 1863, but was not executed until several months afterwards, and was kept at Campbell's house, and was never in the possession of the trustee. Campbell was indebted upon a note for $4.75, dated December 1st 1862, payable nine months after date, for goods bought at the sale of personal property of decedents. Charles H. Hays had a judgment before Squire Gormly for $9,75, with interest from 18th February 1860, upon which an execution attachment was served on 4th November 1863, on the administrator as garnishee of Alfred Campbell. On the 17th March 1863, Alfred Campbell commenced suit against the administrator to recover an alleged claim coming to him from the estate, which he failed to sustain ; and on the 16th March 1865, there was a verdict for defendant, on which judgment was entered on the 25th November 1865. The record costs were $42.06, and the defendant's bill $239.75, paid out of the estate by the administrator. Upon this judgment, an attachment execution was issued on December 16th 1865, and attached all moneys, &c., in the hands of the administrator, and summoned him as garnishee.

It was also in evidence that the constable who served the execution on Hays' judgment in 1863, could find no property out of which he could make the money, and it was returned "no goods," and that he had another execution in favor of W. B. McGaffick, during the same year, and that was also returned "no goods."

Campbell appears to have been a thriftless man, without property of any kind, except the legacy which he assigned to his wife. This is only a general outline which is filled up by the auditor. He held the assignment void as against these debts, and directed them to be paid, and the balance to be paid to the trustee of the wife. The court below reversed this decision as regards the record, costs and defendant's bill, and decreed that the same should not be paid out of Alfred Campbell's legacy, and this is assigned for error.

[Ammon's Appeal.]

In Coates v. Gerlach, 8 Wright 43, Judge Strong said (p. 46), "upon this branch of the case it is conclusive against the wife, that the deed was for all the husband's real estate, and indeed for all his property, so far as appears, except some farming stock, subsequently sold by him for $500. A conveyance that denudes a husband of all, or the greater part, of his property, is much more than a reasonable provision for a wife; for in considering what is and what is not a reasonable provision, the circumstances of the husband are to be regarded—his probable necessities as well as his debts. Equity will not assist a wife to impoverish her husband—accordingly, it has always been held that a conveyance to a wife of all or the greater part of a husband's estate, is an unreasonable provision, which, if voluntary, a court of equity will not sustain. See 1 Fonblanque's Equity, Book 1, Ch. 4, § 12, note (a), where the author remarks that "if a conveyance be of the whole or the greater part of a grantor's property, such conveyance or gift would be fraudulent; for no man can voluntarily divest himself of all or the most of what he has without being aware that future creditors will probably suffer by it: 2 Story's Eq. § 1374, where the principle is clearly stated, with all the authorities."

The same doctrine is to be found substantially in Larkin v. McMullin, 13 Wright 29, and in Mullen v. Wilson, 8 Id. 413. (See Ware v. Gardner, 38 L. J. N. S. Eq. 348, V. C. James and cases cited; Smith's Manual of Equity, p. 88, 89.) Peachey, in his treatise on Marriage Settlements, p. 197, says "It has, however, never been disputed but that a subsequent creditor would participate in the benefit of a decree instituted by a prior creditor, and would have the same equity for having the property applied. Again, no distinction has been drawn in such cases between the different classes of creditors, that is, between those whose debts existed at the time the deed was executed, and those who became creditors subsequently, or that any priority can be given to those who were creditors at the date of the instrument over the subsequent creditors; all would, in fact, participate pro rata."

These authorities support the views taken by the auditor, which reach the real justice of the case, for it would be clearly unjust to suffer him, under cover of his wife, to evade the payment of the costs of an unsuccessful suit against his mother's estate, and to saddle them on his unoffending brothers and sisters.

> Decree reversed, and the report of the auditor confirmed, the costs to be paid out of the legacy to Alfred Campbell.
>
> Record remitted to Orphans' Court to carry out this decree.