WINFIELD S. PARTRIDGE *vs.* HERMIONE HOOD.

Essex. Nov. 4, 1875. — June 22, 1876. COLT, MORTON & LORD, JJ., absent.

An action will not lie on an agreement entered into for the purpose of compounding any misdemeanor, unless it appears that satisfaction has been acknowledged in and approved by the court in which the prosecution was pending, according to the Gen. Sts. *c.* 170, § 33, and *c.* 171, § 28.

CONTRACT upon the following agreement, signed by the defendant, and dated October 5, 1874 :

" In consideration of one dollar and other good and valid consideration to me paid, I hereby agree, upon the delivery to me and in my name, within three days from the date hereof, of a quitclaim deed, conveying the land described in a mortgage deed to Winfield S. Partridge given by Edward K. Hood, said quitclaim deed to be given by said Partridge and said land to be free of all incumbrances except a mortgage now held by the South Scituate Savings Bank for twelve hundred dollars covering on a portion of said land, to give said Partridge a first mortgage deed for twelve hundred and fifty dollars, payable in two years at eight per centum per annum, interest payable semi-annually, on my homestead estate situated on Essex Street, Lynn, Mass. And also a power of sale first mortgage upon a portion of said land to be conveyed to me by said Partridge for one thousand dollars, payable in two years with interest thereon payable semi-annually at the rate of eight per centum per annum ; said land being the westerly half of said land described in said mortgage from Edward K. Hood to W. S. Partridge." .

The answer averred that the consideration of the contract was an agreement on the part of the plaintiff to stop a criminal prosecution against Edward K. Hood, the defendant's son.

At the trial in the Superior Court, before *Bacon,* J., without a jury, the following facts appeared: In August, 1874, a complaint was entered in the Police Court of Lynn, against Edward K. Hood, for having mortgaged to the plaintiff in this action certain real estate in Lynn, without informing him of an existing incumbrance upon it. On this complaint, Hood was bound over to answer at the then next term of the Superior Court for the county of Essex. The land mentioned was the same as that referred to in the agreement declared upon. Upon the day before the grand jury met, one Silsbee, the plaintiff's agent, went to the house of the defendant, and, according to his own testimony, told her that if she would purchase the land of the plaintiff at what it cost him, he having sold under his mortgage and bought it in, " the matter," meaning the prosecution, " could undoubtedly be arranged." Under this inducement the defendant signed the contract. The defendant testified that she signed the contract to save her son from jail, and that Silsbee told her " the prosecution could be stayed." It further appeared that at the time of the trial the complaint was still pending in the Superior Court, never having been heard by the grand jury, and that no acknowledgment of satisfaction had been made by the plaintiff in court or elsewhere of the complaint; that the amount agreed to be paid by the defendant for the land was the precise amount due by her son to the plaintiff at the date of the contract, and that the plaintiff thereby gave up to the defendant all the security he had for the amount.

The plaintiff contended that the arrangement testified to might be made under the Gen. Sts. *c.* 171, § 28, as preliminary to an acknowledgment of satisfaction, and that, at common law, such a misdemeanor might be compounded by the party injured if he received no more than his damages by the injury.

The judge found as a fact that the written agreement declared on was entered into by the defendant for the purpose of compounding said complaint, ruled that it was illegal and void, and ordered judgment for the defendant. The plaintiff alleged exceptions.

*R. E. Harmon,* for the plaintiff.

*D. O. Allen,* for the defendant.

GRAY, C. J. The reason that a private agreement, made in consideration of the suppression of a prosecution for crime, is illegal, is that it tends to benefit an individual at the expense of defeating the course of public justice. The doctrine has never been doubted as applied to felonies, and the English authorities before our Revolution extended it to all crimes. 2 West Symb. Compromise & Arbitrement, § 33. *Horton* v. *Benson*, 1 Freem. 204. Bac. Ab. Arbitrament & Award, A. *Johnson* v. *Ogilby*, 3 P. Wms. 277, and especially the register's book cited by Mr. Cox in a note to page 279. *Collins* v. *Blantern*, 2 Wils. 341. 4 Bl. Com. 363, 364. An appeal of mayhem could be barred by arbitrament, or accord and satisfaction, or release of all personal actions, because it was the suit of the appellant and not of the Crown, and subjected the appellee to damages only, like an action of trespass. *Blake's case*, 6 Rep. 43 *b*, 44 *c*. 2 Hawk. *c*. 23, §§ 24, 25.

Some confusion was introduced into the English law upon this subject by the rulings of Lord Kenyon; Kyd on Awards, (Am ed.) 64–68; *Drage* v. *Ibberson*, 2 Esp. 643; *Fallowes* v. *Taylor*, Peake Ad. Cas. 155; *S. C.* 7 T. R. 475; and by Mr. Justice Le Blanc's suggestion of a distinction between a prosecution for a public misdemeanor and one for a private injury to the prosecutor. *Edgcombe* v. *Rodd*, 5 East, 294, 303; *S. C.* 1 Smith, 515, 520. This confusion was not wholly removed by the opinions of Lord Ellenborough in *Edgcombe* v. *Rodd*, 5 East, 294, 302; in *Wallace* v. *Hardacre*, 1 Camp. 45, 46; in *Pool* v. *Bousfield*, 1 Camp. 55, and in *Beeley* v. *Wingfield*, 11 East, 46, 48; of Chief Justice Gibbs in *Baker* v. *Townshend*, 1 Moore, 120, 124; *S. C.* 7 Taunt. 422, 426; or of Lord Denman in *Keir* v *Leeman*, 6 Q. B. 308, 321.

But in the very able judgment of the Exchequer Chamber in *Keir* v. *Leeman*, 9 Q. B. 371, 395, Chief Justice Tindal, after reviewing the previous cases, summed up the matter thus: "Indeed it is very remarkable what very little authority there is to be found, rather consisting of *dicta* than decisions, for the principle, that any compromise of a misdemeanor, or indeed of any public offence, can be otherwise than illegal, and any promise, founded on such a consideration, otherwise than void. If the matter were *res integra*, we should have no doubt on this point.

We have no doubt that, in all offences which involve damages to an injured party for which he may maintain an action, it is competent for him, notwithstanding they are also of a public nature, to compromise or settle his private damage in any way he may think fit. It is said, indeed, that in the case of an assault he may also undertake not to prosecute on behalf of the public. It may be so; but we are not disposed to extend this any further."

In *Fisher* v. *Apollinaris Co.* L. R. 10 Ch. 297, the plaintiff, pursuant to an agreement of the defendants to abandon a prosecution against him under St. 25 & 26 Vict. *c.* 88, for a violation of their trade mark, gave them a letter of apology, with authority to make such use of it as they might think necessary, and, after they had published it by advertisement for two months, filed a bill in equity to restrain them from continuing the publication, which was dismissed by the Lords Justices. The principal grounds of the decision appear to have been that the defendants had done nothing that the plaintiff had not authorized them to do ; and that, even if the publication affected the plaintiff's reputation, a court of chancery had no jurisdiction to restrain it. See *Prudential Assurance Co.* v. *Knott*, L. R. 10 Ch. 142; *Boston Diatite Co.* v. *Florence Manufacturing Co.* 114 Mass. 69. It was indeed observed that " it was no more a violation of the law to accept an apology in such a case than it would be to compromise an indictment for a nuisance or for not repairing a highway on the terms of the defendants agreeing to remove the nuisance or repair the highway." L. R. 10 Ch. 302. But this observation was not necessary to the decision; and in *The Queen* v. *Blakemore*, 14 Q. B. 544, an agreement for the compromise of an indictment for not repairing a highway was held illegal and void. All the other recent English authorities support the judgment of Chief Justice Tindal, above quoted. *The Queen* v. *Hardey*, 14 Q. B. 529, 541. *Clubb* v. *Hutson*, 18 C. B. (N. S.) 414. *Williams* v. *Bayley*, L. R. 1 H. L. 200, 213, 220.

In *Jones* v. *Rice*, 18 Pick. 440, 442, Mr. Justice Putnam, delivering the opinion of this court, after alluding to the English cases in the time of Lord Kenyon, relied on to " sustain the distinction between considerations arising from the compounding of felonies, which is admitted to be illegal, and the compounding

of misdemeanors, which is alleged to be lawful," said : " We do not think that such a power is vested in individuals. It would enable them to use the claim of the government for their own emolument, and greatly to the oppression of the people. It has a direct tendency to obstruct the course of the administration of justice; and the mischief extends, we think, as well to misdemeanors as to felonies. The power to stop prosecutions is vested in the law officers of the Commonwealth, who use it with prudence and discretion. If it were given to the party injured, who might be the only witness who could prove the offence, he might extort, for his own use, money which properly should be levied as a fine upon the criminal party for the use of the Commonwealth."

It is true that the prosecution in *Jones* v. *Rice* was for a riot as well as for an assault. But the language and the reasoning of the opinion extend to the compounding of any offence whatever. Any act which is made punishable by law as a crime is an offence against the public, and, especially in this country, where all prosecutions are subject to the control of official prosecutors, and not of the individuals immediately injured, cannot lawfully be made the subject of private compromise, except so far as expressly authorized by statute. And this view is supported by the great weight of American authority. *Hinds* v. *Chamberlin*, 6 N. H. 225. *Shaw* v. *Spooner*, 9 N. H. 197. *Shaw* v. *Reed*, 30 Maine, 105. *Bowen* v. *Buck*, 28 Vt. 308. *People* v. *Bishop*, 5 Wend. 111. *Noble* v. *Peebles*, 13 S. & R. 319, 322. *Maurer* v. *Mitchell*, 9 W. & S. 69, 71. *Cameron* v. *M'Farland*, 2 Car. Law Repos. 415. *Corley* v. *Williams*, 1 Bailey, 588. *Vincent* v. *Groom*, 1 Yerger, 430. Met. Con. 226, 227. 1 Story Eq. Jur. § 294.

The Legislature of the Commonwealth has defined the cases and circumstances in which the compromise of a prosecution shall be allowed. By a provision first introduced in the Revised Statutes, when a person is committed or indicted for an assault and battery or other misdemeanor for which the party injured may have a remedy by civil action, (except when committed by or upon an officer of justice, or riotously, or with intent to commit a felony,) if the party injured appears before the magistrate or court and acknowledges satisfaction for the injury sustained,

a stay of proceedings may be ordered. Rev. Sts. *c.* 135, § 25 · *c.* 136, § 27. Gen. Sts. *c.* 170, § 33; *c.* 171, § 28. Such an acknowledgment of satisfaction does not entitle the defendant to be discharged, but leaves it to the discretion of the magistrate or court whether a stay of proceedings is consistent with the interests of public justice. *Commonwealth* v. *Dowdican's Bail,* 115 Mass. 133. See also *State* v. *Hunter,* 14 La. Ann. 71.

In the case at bar, it being found as a fact that the agreement sued on was entered into by the defendant for the purpose of compounding a complaint against her son for a misdemeanor, and it not appearing that satisfaction has ever been acknowledged in or approved by the court in which the prosecution was pending, judgment was rightly ordered for the defendant.

*Exceptions overruled.*