# Swartz *v.* Bachman, Admr., et al.

*Promissory notes—Considerations — Valuable and moral — Insolvency—Creditors—Fraud—Past illicit intercourse—Adultery— "Just before generous."*

1. The transfer by an insolvent of an appreciable portion of his estate in consideration of past sexual intercourse, is merely voluntary, and is subject to be set aside, as fraud upon his creditors.

2. Where a married man solicits an adult married woman to have illicit intercourse with him, and she deliberately consents, and subsequently he gives promissory notes to her, stating that he recognized the wrong she had suffered, and wanted to make amends, such notes are not based on a sufficient consideration, as against creditors, if it appears that they represented about one-fourth of the maker's entire estate, and were given at a time when the latter was hopelessly insolvent, in which condition he continued until his death.

3. The law says that a debtor must be just before he is generous, and good conscience, as well as natural justice, dictates that he must care for his creditors before he can indulge in liberality, even toward others to whom he may properly feel a sense of duty.

4. Contracts between men and women to compensate the latter for actual or supposed damage from past illicit cohabitation, have been upheld frequently; but such a contract has never been sustained where there is deliberate and unextenuated adultery on the part of the woman, and actions prejudicial to creditors on the part of the man.

5. Valuable and moral considerations discussed and illustrated.

Argued March 10, 1920. Appeal, No. 162, Jan. T., 1920, by LaMoss Werner Roth, from judgment of C. P. Northampton Co., April T., 1919, No. 1, for defendant on interpleader bill framed between LaMoss Werner

186      SWARTZ v. BACHMAN, Admr., et al.

Roth, as plaintiff, and Laura S. Bachman, Administratrix of Irving A. Bachman, as defendant, in case of Mark T. Swartz v. Laura S. Bachman, Administratrix of Irving A. Bachman, and LaMoss Werner Roth. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Interpleader to determine the ownership of certain corporate stock.

The case was tried by the court, STEWART, P. J., by agreement, without a jury.

The facts appear by the opinion of the Supreme Court.

The court entered judgment for defendant. Plaintiff appealed.

*Error assigned* was, among others, decree entering judgment for defendant.

*Aaron Goldsmith*, for appellant.—There was a sufficient moral consideration to support the notes: Wyant v. Lesher, 23 Pa. 338; Gisaf v. Neval, 81 Pa. 356; Bailey v. Phila., 167 Pa. 573; Rathfon v. Locher, 215 Pa. 574; Holden v. Banes, 140 Pa. 63.

*W. S. Kirkpatrick*, of *Kirkpatrick & Maxwell*, for appellee.—The promises in the notes to pay are without consideration upon the ground that the only possible consideration was a past one, and that a purely concerted and completed criminal act of the parties to the transaction: Conley v. Nailor, 118 U. S. 127; Holt v. Green, 11 S. & R. 155; Eberman v. Reitzel, 1 W. & S. 181.

There was no moral obligation such as would support an express promise under the laws of this State: Drenan v. Douglas, 40 Am. Rep. 595.

OPINION BY MR. JUSTICE MOSCHZISKER, April 12, 1920:

Plaintiff filed a bill for an interpleader, to have judicially determined the ownership of certain corporate

stock in his hands, but claimed adversely by two others; an issue was framed, with LaMoss Werner Roth, appellant, as plaintiff, and Laura S. Bachman, administratrix of Irving A. Bachman, deceased, as defendant. The case was tried by the court below without a jury, and judgment entered on a verdict for defendant; this appeal followed.

January, 1916, appellant, an adult married woman, and Irving A. Bachman, a married man, spent a week together at a Philadelphia hotel, in illicit intercourse. Bachman, who was the uncle of appellant's husband, frequently visited the Roth home, and, on several occasions, suggested that Mrs. Roth yield to his embraces; finally, after these solicitations had continued some three months, she accompanied him to Philadelphia, with the deliberate purpose of entering into criminal relations. A few weeks thereafter, Bachman met appellant by appointment and stated that, recognizing the wrong she had suffered, he wanted to make amends; thereupon he delivered to her two demand notes, not under seal, one for $6,000 and the other for $5,000, both reciting a pledge, as "collateral," of the stock in question, and giving the right of sale in case of default by the maker. The notes also recite that the same stock is deposited with a certain bank as collateral for a prior loan of $8,000; otherwise, they are drawn in the usual form.

Part of the collateral was sold by the first pledgee, and bought by Mark T. Swartz, its president, who is the complainant in the interpleader bill; the purchaser forthwith entered into an agreement with the pledgor, to hold the stock thus acquired until the latter's obligation to the bank was paid, and then to transfer the shares to Bachman; the bank debt has since been fully discharged. The balance of the stock was also converted into money, and both sums, aggregating $40,596.43, are now in the hands of Swartz; appellant claims therefrom the amount of her notes, $11,000, with interest from

February 1, 1916, admitting that the balance is payable to appellee.

There is no pretense Bachman was financially indebted to Mrs. Roth, or that she had rendered any service to him other than that already recited, and the record shows a finding that "the consideration for the notes in suit was the past cohabitation of Mr. Bachman and Mrs. Roth"; these obligations, representing about one-fourth of the maker's entire estate, were given at a time when the latter was hopelessly insolvent, in which condition he continued until his death, February 11, 1916.

On the facts as found, the court below determined that the attempted transfers to Mrs. Roth lacked a sufficient consideration to support them as against the creditors of Bachman, and the fund realized from the sale of the pledged stock, after certain deductions, belonged to Bachman's estate; it was accordingly awarded to his administratrix for the benefit of creditors.

Appellant contends the notes to her rest upon a "moral consideration," and hence she is entitled to have them paid in full; while appellee claims they lack a "good consideration," and therefore are void as against creditors.

It requires no citation of authority to show that the transfer by an insolvent of an appreciable portion of his estate, without a valuable consideration, is a prima facie fraud upon his creditors; and Chester County Trust Company v. Pugh, 241 Pa. 124, following cited precedents, decides that the administrator of an insolvent decedent may maintain a bill to set aside a conveyance, made by the latter, in fraud of creditors.

We agree with the court below that the transaction under investigation shows no sufficient consideration to support the claim of appellant. The law upon this subject is discussed by Chief Justice BRICKELL, of Alabama, in Potter & Son v. Gracie, 58 Ala. 303, 305, where many authorities are cited. He concludes (and we agree) that, no matter how far transfers of property to

paramours may have been sustained, they stand, and must be judged, as "any other conveyance, springing not from motives of justice, but from......affection, generosity or prudence," and, when so judged, they are not good as against the claims of creditors, which "rest on legal obligations, higher than the demands of affection or generosity." The Chief Justice properly says that, as to creditors, such conveyances are void because their "consideration is not valuable"; he adds, "The inflexible rule of the law is that a man must be just before he is generous," and, since "the claims of wife and children......must yield to the paramount legal duty of the debtor to creditors....., surely other [any] claim, which is the result of an immoral, illegal or meretricious connection, cannot stand on higher ground." "A conveyance or. transfer in consideration of natural love and affection, as......a conveyance to wife or child, is merely voluntary": 20 Cyc. 490.

The maxim referred to in the Alabama case, that "a man must be just before he is generous," has frequently been applied in Pennsylvania: see Stickney v. Borman, 2 Pa. 67, 68; Coates et el. v. Gerlach, 44 Pa. 43; Ammon's App., 63 Pa. 284. In these cases, where transfers of property from husband to wife were alleged as "unfair and unreasonable" to creditors, the maxim was given force, despite the moral, as well as legal, obligation of a husband to provide for his wife; and our law so heeds the rights of creditors that, in Thompson v Dougherty, 12 S. & R. 448, where a man about to enter into a new business transferred approximately half of his property to trustees for the benefit of his wife and children, we said, in setting aside the conveyance: Men, "under the plea of affection for their wives and children," cannot "take away the beds from under the wives and children of their creditors"; which is but another application of the same maxim. See also Fair Haven Marble Co. v. Owens, 69 Vt. 246.

In Mills v. Wyman, 3 Pick. (Mass.) 207, which contains an interesting discussion upon the point in hand, a limited construction is given to the term "moral obligation," and the rule that such an obligation is sufficient consideration for an express promise, is there restricted in its application to instances where a good or valuable consideration once existed. Other cases, however, more broadly define the term as an obligation not enforceable by legal action, but which in good conscience and according to natural justice, is binding on him who incurs it. A more generally accepted definition runs thus: A moral obligation is "that imperative duty which would be enforceable by law were it not for some positive rule which, with a view to general benefit, exempts the party in that particular instance from legal liability": 20 A. & E. Ency. of Law (2d ed.) 872.

The present case does not fall within any of the foregoing definitions; for, as we have seen, the law says that a debtor must be just before he is generous, and good conscience, as well as natural justice, dictates he must care for his creditors before he can indulge in liberality, even toward others to whom he may properly feel a sense of duty. Again, it is obvious that, prior to giving Mrs. Roth the notes in suit, decedent was under no financial obligation to her which, on any theory, could have been enforced at law. Under the circumstances, he might well have felt an inclination to be generous to her, but the law will not permit him to satisfy this natural impulse at the expense of his creditors; and the court below did not err in so deciding.

"A conveyance in consideration of past sexual intercourse is merely voluntary, and subject to be set aside like other conveyances of that character," when made by insolvents and prejudicial to the rights of creditors (20 Cyc. 491); agreements as to such transactions are usually classed as "mere gratuitous promises": 13 Corpus Juris 461.

True, contracts between men and women to compensate the latter for actual or supposed damage from past illicit cohabitation have been upheld frequently, and, sometimes, as resting upon a "moral consideration"; the reason back of these cases is well stated in 6 R. C. L. 718, thus: "Although the woman is not considered guiltless from a moral point of view, the law will not on that account prohibit the person who has caused or perhaps has only contributed to her misfortune from doing her that justice to which he may consider her entitled." We find no case, however, which contains the elements of deliberate, unextenuated adultery on the part of the woman, and actions prejudicial to creditors on the part of the man (as does the one before us), where such a contract has been sustained; the authorities chiefly relied upon by appellant are readily distinguishable.

In Gisaf v. Neval, 81 Pa. 354, 358, so far as the report shows, plaintiff was solvent when he transferred the property there involved, and the transaction presents a "fully executed......gift." It is the case of a man who "wronged a woman and made her a compensation for that injury, and who...... [subsequently sought] to recover it back." The facts are in no sense analogous to those at bar.

Wyant v. Lesher, 23 Pa. 338, must be judged on its own facts. A child had been born, and, in the settlement of a case against the mother's seducer, the latter gave the father of the girl a bond conditioned for her proper treatment and support, as the obligor's prospective wife; no rights of creditors were involved, and we held the bond could be enforced. As noted in the opinion of Justice WOODWARD, a father is legally bound to support his daughter and her children; therefore, before giving his consent to the marriage, the obligee had a right to contract for the bond. The statement in the opinion, that "past cohabitation" has always been considered "sufficient to support a settlement of an agreement to pay money," has no reference to the transfer of

an insolvent's property in fraud of creditors, as in the present case.

Shenk v. Mingle, 13 S. & R. 29, 31, 34, is another instance of seduction followed by the birth of a child. The father of the infant promised to give the mother his bond for a sum of money, and suit was brought to enforce the undertaking, as a contract resting upon a sufficient consideration. This court, speaking by Justice DUN-CAN, there states that, if a man, under such circumstances, "will not marry" the woman, he is in good conscience bound to provide for her and hence this obligation may constitute a moral consideration sufficient to support a future promise so to do in some specified way; but the opinion particularly calls attention to the fact that there is no evidence "the lady was other than a virgin spinster," and notes that, should "moral considerations" be adjudged as only "those imperative duties that would be enforceable by law were it not for some positive rule which, with a view to general benefit,...... exempts the party from legal liability," yet, "even in that measured sense," there is present to support the promise "a pecuniary consideration, founded on a legal right," for "the woman would, on the prosecution of the indictment for the fornication and bastardy, receive a reasonable allowance for lying-in expenses," which she might release, and this would be adjudged "some consideration, some pecuniary benefit."

Rohrheimer v. Winters, 126 Pa. 253, is also a contract case, growing out of a "fornication and bastardy" adjustment. It may be said in this connection (as noted by Chief Justice GIBSON, in Maurer v. Mitchell, 9 W. & S. 69, 71), that, under our law, fornication and bastardy charges may be settled "on agreement between the parties," and hence contracts for the support of the child and mother are in no sense illegal or based on a mere moral consideration; wherein such cases differ essentially from the one before us, involving (as it does) the crime of adultery, which cannot in any manner be con-

tractually settled between the guilty parties. Moreover, in Rohreheimer v. Winters, like the other cases cited by appellant, the rights of creditors were not involved.

We have determined against appellant the only two questions stated by her, (1) the administratrix's right to maintain the present suit, (2) the validity of the notes and assignments of stock as against the creditors of the insolvent assignor, and shall not pass specifically upon the assignments of error. It is sufficient to say none of them shows ground for reversal; they are all overruled.

The order appealed from is affirmed; costs to be paid out of the fund.