CHARLES COE & others[1] *vs*. SEX OFFENDER REGISTRY BOARD.

Suffolk. June 30, 2004. - August 3, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender Registration and Community Notification Act. Sex Offender. Constitutional Law,* Sex offender, Privacy. *Due Process of Law,* Sex offender. *Privacy.*

In a civil action by several plaintiffs who had been designated as level three sex offenders pursuant to G. L. c. 6, § 178K (2) (c), seeking an injunction enjoining the defendant from disseminating offender-specific registration information over the Internet, the judge properly ordered the dissolution of a preliminary injunction, where publication on the Internet of such information for level three sex offenders did not violate the plaintiffs' rights under art. 12 of the Declaration of Rights of the Massachusetts Constitution, in that the plaintiffs had received the process that was due through notice and a fair hearing prior to their designations as level three sex offenders and prior to any registration information being disseminated [256-258]; moreover, the plaintiffs did not satisfy their heavy burden of demonstrating beyond a reasonable doubt that the statute permitting such publication did not bear a reasonable relation to a permissible legislative objective, given that Internet dissemination of level three sex offender registration information effectively allowed the communication of information to help protect victims and others in a practical way, the statute served the important public safety goal of notifying the public of those level three sex offenders who are in violation of their registration requirement so that they may be apprehended, and clear and specific warnings served to confine the reach of the website on which the information appeared [258-261].

CIVIL ACTION commenced in the Superior Court Department on May 13, 2003.

A motion to dissolve a preliminary injunction was heard by *Bonnie H. MacLeod*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Carol A. Donovan*, Committee for Public Counsel Services

---

[1]Daniel Doe, Francis Foe, Larry Loe, and Paul Poe. The names of the plaintiffs are pseudonyms.

(*Susan V. Oker*, Committee for Public Counsel Services, with her) for the plaintiffs.

*Daniel A. Less*, Special Assistant Attorney General (*Jane L. Willoughby*, Assistant Attorney General, with him) for the defendant.

The following submitted briefs for amici curiae:

*Timothy J. Cruz*, District Attorney, & *Gail M. McKenna*, Assistant District Attorney, for District Attorney for the Plymouth District & others.

*Barbara Fedders* for Harvard Law School Criminal Justice Institute & others.

*Daniel S. Armagh* & *Jessica A. Derder* for National Center for Missing & Exploited Children & others.

GREANEY, J. We granted an application by the sex offender registry board (board) for direct appellate review to decide whether a Superior Court judge correctly dissolved a preliminary injunction that enjoined the board from disseminating "offender-specific registration information" on the Internet. The case involves a challenge under art. 12 of the Declaration of Rights of the Massachusetts Constitution to an amendment to the sex offender act, G. L. c. 6, §§ 178C-178Q (act), that requires the board to publish on the Internet "sex offender information," relating only to level three sex offenders. See St. 2003, c. 140, §§ 5, 11-14 (Internet legislation). We affirm the order of dissolution.

The background of the case is as follows. Each plaintiff, after an evidentiary hearing before the board, was designated by the board as a level three sex offender,[2] and was required to register as such with the board.[3] See G. L. c. 6, §§ 178C, 178E, 178K, 178L. On May 13, 2003, the plaintiffs filed a verified complaint

---

[2]A level three sex offender is a designation given to a "[s]ex offender," as defined in G. L. c. 6, § 178C, for whom "the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination [of the sex offender's registration information]," *id.* at § 178K (2) (*c*).

[3]Charles Coe was convicted in 1986 of indecent assault and battery on a person over the age of fourteen years, in 1991 of rape, in 1994 of indecent assault and battery on a person over the age of fourteen years, and in 1997 of rape. Daniel Doe was convicted in 1989 of indecent assault and battery on a person over the age of fourteen years, indecent assault and battery on a person

seeking preliminary and permanent injunctive relief prohibiting, as far as relevant here, the board from "posting [the] plaintiffs' sex offender registration information on any internet website." The lawsuit was prompted by the Governor's announcement on April 2, 2003, that, beginning on May 15, 2003, the board would post level three sex offender registration information on an Internet website maintained by the board. A Superior Court judge allowed the plaintiffs' application for a preliminary injunction enjoining the board from "posting offender-specific registration information on the Internet." The judge concluded that the plaintiffs had demonstrated a likelihood of success on the merits because the act had not authorized *Internet* posting or dissemination of sex offender registration information.

Subsequently, in June, 2003, the Governor filed the proposed Internet legislation. 2003 House Doc. No. 3885. The Internet legislation was enacted as emergency legislation, and took effect, on November 26, 2003. See St. 2003, c. 140, §§ 5, 11-14. Section 5 of St. 2003, c. 140, the primary section of the Internet legislation, provides:

> "Notwithstanding sections 178C to 178P, inclusive, or any other general or special law to the contrary and in addition to any responsibility otherwise imposed upon the board, the board shall make the sex offender information contained in the sex offender registry, delineated below in subsections (i) to (viii), inclusive, available for inspection by the general public in the form of a comprehensive database published on the internet, known as the 'sex offender internet database'; provided, however, that no registration data relating to a sex offender given a level 1 or level 2 designation by the board under section 178K shall be published in the sex offender internet database but

under the age of fourteen years, drugging a female for sexual intercourse, and contributing to the delinquency of a minor. Francis Foe was convicted in 1992 of two counts of rape of a child without force, and in 1999 of three counts of rape of a child with force and five counts of indecent assault and battery on a child. Larry Loe was convicted in 1999 of "four counts of indecent assault and battery on a child and open and gross conduct." Paul Poe was convicted in 1969 of unnatural acts, indecent assault on a child, lewd and lascivious conduct, and indecent assault and battery on a child, and in 1992 of two counts of rape of a child with force, and two counts of indecent assault and battery on a child.

may be disseminated by the board as otherwise permitted by said sections 178C to 178P, inclusive; and provided further, that the board shall keep confidential and shall not publish in the sex offender internet database any information relating to requests for registration data under sections 178I and 178J:

"(i) the name of the sex offender;

"(ii) the offender's home address;

"(iii) the offender's work address;

"(iv) the offense for which the offender was convicted or adjudicated and the date of the conviction or adjudication;

"(v) the sex offender's age, sex, race, height, weight, eye and hair color;

"(vi) a photograph of the sex offender, if available;

"(vii) whether the sex offender has been designated a sexually violent predator;

"(viii) whether the offender is in compliance with the registration obligations of sections 178C to 178P, inclusive.

"All information provided to the general public through the sex offender internet database shall include a warning regarding the criminal penalties for use of sex offender registry information to commit a crime or to engage in illegal discrimination or harassment of an offender and the punishment for threatening to commit a crime under section 4 of chapter 275. The sex offender internet database shall be updated regularly, based on information available to the board and shall be open to searches by the public at any time without charge or subscription. The board shall promulgate rules and regulations to implement, update and maintain such a sex offender internet database, to ensure the accuracy, integrity and security of information contained therein, to ensure the prompt and complete removal of registration data for persons whose duty to register has terminated or expired under section 178G, 178L or 178M or any other law and to protect against the

inaccurate, improper or inadvertent publication of registration data on the internet."

Users of the proposed website established by the board may search (at no charge) for registration information about level three sex offenders by last name; by town, city, zip code, or county where the level three sex offender resides or works; or by a specific category, namely level three sex offenders who are not in compliance with their registration obligations. The board posts the following paragraphs on the website's "User Acknowledgment and Acceptance" page, requiring users of the site to "agree" to the text of the third paragraph before being able to search for information:

"INFORMATION SHALL *NOT* BE USED TO COMMIT A CRIME OR TO ENGAGE IN ILLEGAL DISCRIMINATION OR HARASSMENTS OF AN OFFENDER. ANY PERSON WHO USES INFORMATION DISCLOSED PURSUANT TO [the act] FOR SUCH PURPOSES SHALL BE PUNISHED . . . . IN ADDITION, ANY PERSON WHO USES REGISTRY INFORMATION TO THREATEN TO COMMIT A CRIME MAY BE PUNISHED . . . .[4]

"Pursuant to [the act], the individuals who appear on the following notifications have been designated Level 3 Sex Offenders by the Sex Offender Registry Board. The Board has determined that these individuals have a high risk to reoffend and that the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active community notification.[5]

---

[4]This same language applies to written requests to the board for sex offender information for level two and level three sex offenders. See G. L. c. 6, § 178I. Such requests must identify an individual "by name, date of birth or sufficient personal identifying characteristics," and must be made by persons eighteen years of age or older who state that he or she "is requesting sex offender registry information for his own protection or for the protection of a child under the age of 18 or another person for whom the requesting person has responsibility, care or custody." *Id.*

[5]The statement "Individuals are *not* wanted by police" was removed from the website because the statement would not be applicable to offenders who are in violation of their registration requirements, and because an offender may otherwise be wanted by the police for reasons unknown to the board.

"By proceeding you are agreeing that you are a person who is 18 years of age or older, that you have read and understand the statements above, that you acknowledge that you are requesting this information for your own protection or for the protection of a child or another person for whom you have responsibility, care, custody, and that you believe you are likely to encounter an offender who may be posted on this website."

Users who "agree" to these conditions are not required to identify themselves by opening a user account, obtaining a password or otherwise providing information about themselves.

When displaying a level three sex offender's registration information, as provided by the Internet legislation, the board displays the following on its website:

"The Sex Offender Registry Board updates this information on a regular basis to try to assure that it is complete and accurate. However, this information can change quickly. You are cautioned that information provided on this site may not reflect the current addresses, status, or other information regarding a Level 3 sex offender. If you believe that any information found in these records is in error, please contact your local Police Department or the Commonwealth of Massachusetts Sex Offender Registry Board by phone at 978.740.6400."

Concerning a level three sex offender's compliance with the act's registration requirements, the board's website:

(1) Permits users to obtain information on all level three sex offenders who are not in compliance with their sex offender registration obligations by allowing users to select the word "VIOLATION" in the "County" field on the "Search Form" page;

(2) Informs users that if a level three sex offender is not in compliance with his or her registration requirements, the board will not provide that offender's home or work address because the offender has failed to verify or provide a correct address as the law requires. "An offender who is in violation may be subject to arrest and prosecution pursuant to [the act]. If you have any information regarding the

whereabouts of a level [three] sex offender who is in viola-
tion, please contact you local Police Department or the
Sex Offender Registry Board by phone . . . ."; and

(3) When displaying a level three sex offender's
information on the website who is not in compliance with
his or her registration obligations, does not display the of-
fender's home or work address, but may display the
municipality where the offender was last known to live or
work. If a level three sex offender is not in compliance
with his or her registration obligations, the "Level 3 Sex
Offender — Detail Flyer" page will display "OFFENDER
IS IN VIOLATION" in the address portion of the page.

The level three sex offender registration information
contained on the website comes from level three sex offenders,
who provide the information to police officers when they
register at local police departments. See § 178F ½; 803 Code
Mass. Regs. § 1.30 (2004). Police officers enter the information
in a computer terminal connected to the Criminal Justice
Information System (CJIS), which transmits the information
through CJIS directly into the board's sex offender registry
computer database. Both the police and the board are required
to update the board's sex offender registry computer database
when certain registration information changes (e.g., a sex of-
fender provides a new address or a sex offender's obligation to
register expires). Based on the Internet legislation, the board, on
January 12, 2004 (after it had promulgated policies and regula-
tions required by St. 2003, c. 140, § 5) moved to dissolve the
preliminary injunction. A different Superior Court judge al-
lowed the motion and also allowed the plaintiffs' motion for a
stay to seek review of her order.

1. In determining whether the preliminary injunction was
properly dissolved, we review "whether the judge abused her
discretion, which includes considering whether she applied
proper legal standards." *Doe* v. *Attorney Gen. (No. 2)*, 425
Mass. 217, 219 (1997) (*Doe [No. 2]*), citing *Packaging Indus.
Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980). As in *Doe
(No. 2)*, *supra*, this case presents a question of law on a limited
factual record that does not implicate credibility determinations.

2. In *Doe* v. *Attorney Gen.*, 426 Mass. 136, 143 (1997), we concluded that the plaintiff, a level one sex offender, had "sufficient liberty and privacy interests constitutionally protected by art. 12 that he is entitled to procedural due process before he may be required to register [as a sex offender under the act] and before information may properly be publicly disclosed about him." A combination of circumstances led us to draw this conclusion, namely "(1) the requirement that [the sex offender] register with local police; (2) the disclosure of accumulated personal information on request; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and most important, (5) the statutory branding of him as a public danger, a sex offender." *Id.* at 144. We have been, and are, aware of the range of potential adverse consequences to level three sex offenders who are required to register with the board. That there may be additional adverse consequences to the plaintiffs resulting from *Internet* dissemination of their sex offender registration information[6] does not increase the State due process protection due to them. The judge correctly concluded that the plaintiffs have received the process that was due through notice and a fair hearing prior to their designations as level three sex

---

[6]The adverse consequences resulting to the plaintiffs to date have come from neighbors and from incidents in the communities in which they live and work. These consequences flow from the sex offender registration information dissemination provisions that already exist in the act. See §§ 178I, 178J, 178K (2) (*c*). Such consequences cannot be said to be exacerbated by Internet dissemination when the information available on the Internet is already accessible, or is actively disseminated, under the above cited provisions of the act. Any consequences resulting from any method of dissemination of registration information are the result of the level three sex offender's crimes. Concerning adverse consequences resulting from dissemination to those who would not otherwise be eligible to the information under §§ 178I and 178J, or pursuant to § 178K (2) (*c*), the plaintiffs offer only speculation regarding possible adverse consequences, such as possible terrorism from an expansive "pool of potential vigilantes" in nearby municipalities, possible solicitation by pornographers, possible solicitation by other sex offenders, and the possible creation of unauthorized rogue websites. That other individuals may misuse registration information does not render the dissemination of that information unconstitutional. As is the case under §§ 178I and 178J, all persons using the board's website will receive a warning regarding the criminal penalties for misusing the information.

offenders as required by the act and case law,[7] and prior to any registration information being made available for dissemination.

The plaintiffs also argue that publication of their sex offender registration information over the Internet (on the board's website) violates art. 12 because "[w]orld-wide internet dissemination is not 'carefully calibrated' to serv[e] a public safety interest" and is overly broad because publication is not targeted to reach persons supposedly threatened by them. The plaintiffs are faced with the rule that the Internet legislation is presumed to be constitutional, and that to defeat the presumption, they must demonstrate beyond a reasonable doubt that the statute does not bear a "reasonable relation to a permissible legislative objective." *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 270 (1992). See *St. Germaine* v. *Pendergast*, 416 Mass. 698, 703 (1993). The plaintiffs have not satisfied this heavy burden.

Any crime is an offense against the public as well as a violation of the victim's rights.[8] *Partridge* v. *Hood*, 120 Mass. 403, 407 (1876). Sexual crimes are particularly odious in nature and damaging in their consequences. Level three sex offenders are the most dangerous of all sex offenders, having been adjudged at a high risk of reoffense. Level three sex offenders are not prohibited from leaving their residences or places of employment, and are not restricted in traveling in and outside of the Commonwealth, with the result that their potential future victims may be anywhere. In view of these facts, the Legislature's choice of Internet dissemination of only level three sex offender

[7]See *Doe* v. *Attorney Gen.*, 426 Mass. 136, 146 (1997) (holding that the plaintiff "is entitled to a hearing and a determination as to whether he must register under the act and, if so, whether sex offender information concerning him should be available on request"). See *Doe, Sex Offender Registry Board No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 91 (1998) (concluding that hearing required "should be held before the [sex offender registry] board pursuant to G. L. c. 30A, that the appropriateness of an offender's risk classification must be proved by a preponderance of the evidence, and that the board must make specific, written, detailed, and individualized findings to support the appropriateness of each offender's risk classification").

[8]Certainly, no member of the public can be affected by a crime as the victim is affected, but the offense to the victim simultaneously inflicts harm on the public.

registration information bears a real and substantial relation to protecting the public health and safety by notifying the public about dangerous offenders who live and work in the Commonwealth, and who are not necessarily residing or working in a potential victim's neighborhood or community. See *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418 (1940). Contrary to the plaintiffs' contentions, widespread public access of level three sex offender information is an "apt fit" to contemporary life. Such a sex offender can be in Pittsfield today, Springfield tomorrow, Boston the day after, and elsewhere the next day. Offenders may themselves use the Internet to establish contact with future victims. In addition to the mobility of level three sex offenders, potential victims, including children, do not always stay in their home communities. Internet dissemination of level three sex offender information effectively allows the communication of information to help protect victims and others in a practical way.

The Internet legislation serves another important public safety goal, notifying the public of those level three sex offenders who are in violation of their registration requirement so that they may be apprehended. See St. 1999, c. 74, § 1. Limited *community-only* dissemination of level three sex offender registration information reduces the likelihood of apprehending such offenders because they may be living outside of their home communities. Without Internet dissemination, the efficacy of this aspect of the act could be compromised.

Although worldwide access of level three sex offender registration information may be possible, the board's website serves to confine its reach by means of its clear and specific warnings on improper use and required acknowledgment that any user is requesting the information for his or her own protection or for the protection of a child or another person for whom he or she has responsibility, care, or custody, and believes that he or she is likely to encounter an offender. In concluding that the Alaska Sex Offender Registration Act, which makes certain sex offender information open to the public by way of the

Internet,[9] is not punitive, the United States Supreme Court described Internet notification as a "passive" notification system. *Smith* v. *Doe*, 538 U.S. 84, 105 (2003). The Supreme Court explained:

> "An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for Alaska's citizenry."

*Id.* at 99. These comments apply to the board's website.[10]

Finally, as other courts have observed, the farther removed an individual is from Massachusetts geographically, the less likely it is that that person would consult the Internet to obtain information from the board's website. See *Femedeer* v. *Haun*, 227 F.3d 1244, 1253 (10th Cir. 2000) (explaining, in rejecting claim that Utah's sex offender Internet notification imposed consequences on offenders that were excessive in relation to public safety benefits, that "the dangers resulting from widespread availability are negated by the decreasing likelihood that the information will actually be obtained"). "[A]s a practi-

---

[9]The legislation did not specify the means by which to make the information public. *Smith* v. *Doe*, 538 U.S. 84, 91 (2003). The enforcement agency of the State of Alaska chose to make that information public by way of Internet access. *Id.* Information accessible on the Internet includes "the sex offender's or child kidnapper's name, aliases, address, photograph, physical description, description[,] license [and] identification numbers of motor vehicles, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, length and conditions of sentence, and a statement as to whether the offender or kidnapper is in compliance with [the update] requirements . . . or cannot be located." *Id.* at 91, quoting Alaska Stat. § 18.65.087(b) (2000).

[10]Approximately forty-two States post some form of sex offender information on a State-sponsored Internet website. While the information that can be obtained on the websites varies, what emerges is an explicit public policy trend to post information on sex offenders in order to protect society. From what we are able to discern, our State's Internet legislation is among the most restrictive of the many statutes in that it requires the posting of registration information of only level three sex offenders.

cal matter, the *actual* audience for the information is essentially self-defining and self-limiting: The information will be obtained by people who choose to seek it. Bluntly, although the information could, in the abstract, be available to millions of people, the vast majority of those who will take the time and effort to obtain the information will be those who fall within the statute's remedial ambit, particularly including parents or others responsible for young children who might come into contact with the offender." *Meadows* v. *Board of Parole & Post-Prison Supervision*, 181 Or. App. 565, 577-578 (2002).

To sum up: each individual is guaranteed by art. 12 a significant measure of privacy free from governmental invasion (or intrusion by others) and an equally significant right of liberty. But, our Constitution also protects the right of our citizens as a whole, and the right of each individual, to be safe and secure from criminal and predatory acts of others. We do not live in a utopian society. By reason of the necessities of the situation, the registration information of level three sex offenders, lawfully determined to pose a high risk of danger to others, may be posted on the Internet to protect society, and in authorizing the posting, with careful safeguards, the Legislature has acted reasonably to promote a proper public objective. For the reasons stated, the judge correctly determined that the plaintiffs cannot show a likelihood of success on the merits and, on that ground, did not abuse her discretion in dissolving the preliminary injunction.

3. The order dissolving the preliminary injunction is affirmed.

*So ordered.*