COMMONWEALTH vs. RUSSELL M. CORY.

Bristol. January 8, 2009. - August 18, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act.
Global Positioning System Device. Practice, Civil,* Sex offender. *Constitutional Law,* Ex post facto law, Sex offender. *Due Process of Law,* Sex offender. *Statute,* Retrospective statute, Construction. *Words,* "Is placed on probation."*

This court concluded that G. L. c. 265, § 47, which requires any person who is "placed on probation" after conviction of a designated sex offense to wear a global positioning system tracking device for the duration of his or her probation, by its strict terms applied to a defendant who was "placed on" postconviction probation following the statute's effective date [562-563]; however, as the statute was punitive in effect, given that it imposed a substantial limitation on liberty as part of the sentence for certain crimes, the ex post facto provisions of the United States and Massachusetts Constitutions prohibited its application to persons who, like the defendant, were placed on probation for qualifying sex offenses committed before the statute's effective date [563-573]. IRELAND, J., dissenting, with whom SPINA and COWIN, JJ., joined.

INDICTMENTS found and returned in the Superior Court Department on January 16, 1997.

A proceeding for revocation of probation was heard by *Robert J. Kane,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Theodore F. Riordan (Deborah Bates Riordan* with him) for the defendant.

*M. Catherine Huddleson,* Special Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. General Laws c. 265, § 47, inserted by St. 2006, c. 308, § 8 (§ 47), requires any person who is "placed on probation" after conviction of a designated sex offense to wear a global positioning system (GPS) tracking device for the dura-

tion of his or her probation.[1] In March, 2008, a judge in the Superior Court ruled that this statute applied to the defendant, and entered an order modifying the terms of the defendant's probationary sentence to require that he wear a GPS device during his probation. The defendant appealed, and we granted his application for direct appellate review. We conclude that § 47 by its terms applies to the defendant, because he was "placed on" postconviction probation following the statute's effective date of December 20, 2006. We further conclude, however, that § 47 is punitive in effect and, under the ex post facto provisions of the United States and Massachusetts Constitutions, may not be applied to persons who are placed on probation for qualifying sex offenses committed before the statute's effective date.[2] Because the defendant committed and was convicted of his qualifying sex offense before § 47 was enacted, the statute may not be applied to him. We therefore vacate the order of the Superior Court judge and remand for further proceedings.[3]

*Facts and background.* We recite the essential facts reflected

[1]"A GPS [global positioning system] device, as implemented by the Commissioner of Probation . . . , consists of two pieces of electronic equipment: an ankle bracelet, which is permanently attached to the probationer, and a GPS-enabled cellular telephone, which communicates with the ankle bracelet and transmits the probationer's current location to the probation department." *Commonwealth* v. *Raposo*, 453 Mass. 739, 740 (2009).

[2]The defendant does not challenge prospective application of G. L. c. 265, § 47, and so we do not consider the constitutionality of the statute as prospectively applied.

[3]The judge's order may be moot. The Commonwealth reports that, since this case was argued, the defendant was found to be in violation of his probation, based in part on failure to comply with GPS monitoring requirements and in part on failure to undergo a required mental health evaluation, and was sentenced to serve the balance of his sentence without further probation. The Commonwealth nevertheless requests that we address the issues raised by the defendant's appeal, and the defendant has not opposed that request. In light of the fact that the defendant's probation was revoked for reasons that related in part to the GPS requirement, the case may still present a live issue. In any event, the case is fully briefed and argued, and the issues raised are certain to arise again. Because of the significant public interest in deciding those issues, we exercise our discretion to reach the merits of the defendant's appeal regardless of mootness. See *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 629 n.4 (1988), cert. denied, 490 U.S. 1066 (1989); *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). See generally *Commonwealth* v. *McCulloch*, 450 Mass. 483, 486 (2008), and cases cited.

in the record, which are not disputed. On December 3, 1997, the defendant pleaded guilty in the Superior Court to a charge of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B, and was sentenced to twenty-five years' probation. The defendant also pleaded guilty to a charge of rape of a child, G. L. c. 265, § 23, for which he was sentenced to a term of from seven to ten years in State prison.[4] In May of 2006, the defendant was released on parole, but because he was also serving his probationary sentence, the probation department assumed responsibility for his supervision beginning in July of 2006. On October 19, 2006, a probation surrender notice issued to the defendant, alleging that he had violated several conditions of his probation that required him to attend counselling and treatment programs. On December 20, 2006, G. L. c. 265, § 47, took effect. See St. 2006, c. 303, § 8. On January 5, 2007, a Superior Court judge (first Superior Court judge) held a probation revocation hearing, and found the defendant to be in violation of his probation. That probation was revoked, and the judge sentenced the defendant to two and one-half years in a house of correction, with one year to serve and the balance suspended for six years, with the defendant to be on probation during the suspended portion of the sentence. Although § 47 was then in effect, the judge did not order the defendant to wear a GPS tracking device as a condition of this probation, and there was no mention of § 47 at the revocation hearing.

Subsequently, the probation department requested that the conditions of the defendant's probation ordered on January 5, 2007, be amended to include a requirement that the defendant wear a GPS device, pursuant to § 47. A hearing was held on February 22, 2008, before a second Superior Court judge. The judge concluded that § 47 applies to sex offenders who commence a term of probation after the statute's effective date. He further concluded that because, in his view, the "commencement of probation is the triggering event," the statute was not impermissibly retroactive as applied to the defendant, whose current probationary term did not begin until after § 47 became effective. Accordingly, the second judge ordered that the defendant be required to

---

[4]The rape charge is not at issue in this case.

be monitored by the probation department with a GPS tracking device during his probationary term "in accordance with" § 47.

*Discussion.* The defendant's appeal from the judge's order focuses entirely on § 47. He claims that the statute does not apply to him because he was "placed on probation" when he was originally sentenced to probation in 1997, long before the statute's effective date. His primary argument, however, is that, in any event, § 47 cannot be applied to him, because in the circumstances of his case, § 47 operates as an unconstitutional ex post facto law.[5]

1. *Does § 47 apply to the defendant?* Section 47 states in relevant part:

> "Any person who is *placed on probation* for any offense listed within the definition of 'sex offense', a 'sex offense involving a child' or a 'sexually violent offense', as defined in [G. L. c. 6, § 178C], shall, as a requirement of any term of probation, wear a global positioning system device, or any comparable device, administered by the commissioner of probation, at all times for the length of his probation for any such offense. The commissioner of probation, in addition to any other conditions, shall establish defined geographic exclusion zones including, but not limited to, the areas in and around the victim's residence, place of employment and school and other areas defined to minimize the probationer's contact with children, if applicable. If the probationer enters an excluded zone, as defined by the terms of his probation, the probationer's location data shall be immediately transmitted to the police department in the municipality wherein the violation occurred and the commissioner of probation . . . . If the commissioner or the probationer's probation officer has probable cause to believe that the probationer has violated this term of his probation, the commissioner or the probationer's probation officer shall arrest the probationer pursuant to [G. L. c. 279, § 3]. Otherwise, the commis-

---

[5]The Commonwealth does not disagree that the judge's order that GPS monitoring be added as a term of probation was premised on the judge's conclusion that G. L. c. 265, § 47, mandated this result, and that therefore the issues raised in this case are whether § 47 applies and can be applied to the defendant.

sioner shall cause a notice of surrender to be issued to
such probationer." (Emphasis added.)

At issue is the meaning of the phrase, "is placed on probation."

In seeking to interpret a statute, the starting point is its lan-
guage. *Commonwealth* v. *Welch*, 444 Mass. 80, 85 (2005). Because
the Legislature used the present tense verb "is placed" before the
word "probation," we conclude that § 47 by its strict terms ap-
plies to sex offenders who are convicted of designated or qualify-
ing sex offenses and who are sentenced to probation after the ef-
fective date of the statute, regardless of whether the crimes at
issue were committed before or after the statute's effective date.[6]
The statute applies to the defendant in this case, because he was
"placed on probation" on January 5, 2007 — the date the first
Superior Court judge found him in violation of his previous
probationary sentence, revoked that probation, and imposed the
new sentence with a new probationary term of six years.[7]

2. *Is § 47 an ex post facto law*? Because we conclude that

[6]We therefore reject both the defendant's and the Commonwealth's reading
of § 47. As has been stated, the defendant argues that for purposes of § 47,
he was "placed on probation" in 1997, when he received the twenty-five year
probationary sentence, and therefore long before § 47 was in effect. In light
of the facts that (1) the probationary term the defendant was serving pursuant
to the 1997 sentence had been revoked and a new probationary sentence had
been imposed after § 47's effective date; and (2) the challenged order impos-
ing the GPS monitoring requirement pursuant to § 47 applied only to the new
probationary sentence, the defendant's argument fails. The Commonwealth's
argument is that § 47 governs sex offenders serving sentences of probation on
and after the effective date of § 47, and it does not matter whether they were
sentenced before or after that date. This assertion finds no support in the
language the Legislature chose to use in § 47. If the Legislature had intended
the statute to apply to all qualifying sex offenders currently on probation,
presumably it would have written "any person who *has been* placed on proba-
tion," or else omitted the words "is placed" altogether.

[7]The second Superior Court judge pointed out, correctly, that our cases
have sometimes used the phrase "placed on probation" to refer to the time
that the defendant was sentenced to a term of probation, see, e.g., *Com-
monwealth* v. *Bruzzese*, 437 Mass. 606, 610 (2002); and, at other times, have
used the same phrase to refer to the time the defendant began serving a
probationary sentence. See, e.g., *Commonwealth* v. *Delisle*, 440 Mass. 137,
138 (2003). As indicated in the text *supra*, we adopt here the former meaning
— the time that the defendant is sentenced to probation — but the choice
makes no difference in this case, because the effective date of § 47 preceded
both the imposition of the probationary sentence in 2007 and the later com-
mencement of the probationary term under that sentence.

§ 47 applies to the defendant, we must consider the defendant's claim that as so applied, the statute is an unconstitutional ex post facto law.[8] An ex post facto law is, in this context, one that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Commonwealth* v. *Bargeron*, 402 Mass. 589, 590 (1988), quoting *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798).[9] "To prevail on this sort of ex post facto claim, [the defendant] must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." *Johnson* v. *United States*, 529 U.S. 694, 699 (2000). See *Miller* v. *Florida*, 482 U.S. 423, 430 (1987), quoting *Weaver* v. *Graham*, 450 U.S. 24, 31 (1981) ("A law is retrospective if it 'changes the legal consequences of acts completed before its effective date' ").

The defendant received his most recent probationary sentence — and the GPS monitoring requirement imposed under § 47 as a term of that probation — as a consequence of the violation of his prior probation. Penalties for violation of the terms of supervised release, including the penalty of additional supervised release, are attributed to the original conviction rather than to the violation. *Johnson* v. *United States*, *supra* at 700-701. Cf. *Krochta* v. *Commonwealth*, 429 Mass. 711, 714 (1999) ("[probation] revocation does not punish the defendant for any crime

---

[8]The Commonwealth argues that the defendant did not raise his ex post facto challenge to the statute below. The defendant argues that he did preserve it when his attorney argued, in essence, that it was not fair to apply the new statute to the defendant; certainly the judge considered the question of retroactive application. In the circumstances, we consider the issue raised. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 573 (1985). Cf. *Commonwealth* v. *Welch*, 444 Mass. 80, 81, 93 (2005) (noting that in certain circumstances court will consider constitutional issue even where not necessary to particular outcome).

[9]The United States Constitution prohibits ex post facto laws in art. I, § 10, cl. 1, which reads: "No state shall . . . pass any . . . ex post facto law." Article 24 of the Massachusetts Declaration of Rights provides: "Laws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government." We have treated the meaning and scope of the ex post facto provisions in the Federal and State Constitutions as identical. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 492 n.4 (2000).

charged subsequent to the imposition of probation"). Thus, because the probationary sentence the defendant received in 2007 relates back to a criminal offense he committed in or before 1997 (when he was originally convicted), § 47 has a retrospective application to him. It is necessary, therefore, to consider whether § 47 constitutes punishment or, what is to the same effect, is penal. See *Opinion of the Justices*, 423 Mass. 1201, 1225 (1996).

This consideration involves a two-part inquiry. First, we must try to discern whether the Legislature explicitly or implicitly intended to denominate the statute a civil remedy or criminal penalty. See *Smith* v. *Doe*, 538 U.S. 84, 93 (2003), quoting *Hudson* v. *United States*, 522 U.S. 93, 99 (1997) ("The courts 'must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other' "). See also *Commonwealth* v. *Bruno*, 432 Mass. 489, 500 (2000) (*Bruno*) ("Whether a statute was intended to be criminal or civil depends on the Legislature's intent, which is a matter of statutory construction"). If the Legislature intended to denominate the statute as criminal, that ends the inquiry. If, however, the Legislature evinced an intent that the statute be civil, the second part of the inquiry comes into play: is the statutory scheme " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Smith* v. *Doe*, *supra* at 92, quoting *Kansas* v. *Hendricks*, 521 U.S. 346, 361 (1997). In such circumstances — i.e., where there is an evident legislative intent to create a civil regime — the party challenging the statute carries a very heavy burden to show that the statute is punitive in one of these ways. *Smith* v. *Doe*, *supra*.

For the first part of this inquiry, which focuses on legislative intent, examination of the statute's text and structure is key. *Id.* Courts have identified certain factors of text and structure that may signal an intent to create a civil or regulatory scheme. See, e.g., *id.* at 93-96 (looking to explicit statement of civil intent contained in statute; statute's lack of safeguards associated with criminal process; placement of statute within civil or criminal code); *Kansas* v. *Hendricks*, 521 U.S. at 361 (looking to statute's placement in probate, rather than criminal, code; statute's denomination as "civil commitment procedure"); *Bruno*, 432 Mass. at 500 (looking to denomination of "civil commitment"; placement in public welfare chapters; statute's title, "Care, Treatment

and Rehabilitation of Sexually Dangerous Persons"; stated purposes of "protect[ing] forthwith the vulnerable members of our communities from sexual offenders" and "care, custody, treatment and rehabilitation" of offenders).

Section 47 contains not one of these recognized indicators that the Legislature intended a civil categorization: it has no statement of civil intent in its preamble, title, or text; it is imposed *only* in the criminal context, when an offender is sentenced to probation; and it is placed in a criminal code (G. L. c. 265, "Crimes Against the Person"). Moreover, the structure of the statute suggests a penal or punitive intent: the GPS requirement must be uniformly imposed on every defendant sentenced to probation for certain sex offenses, and for precisely the period of his or her probationary sentence, without regard to present dangerousness, and even if there are no exclusion zones that can reasonably be applied to the defendant.[10,11] It bears emphasis as well that probation itself serves as a disposition of and punishment for a *crime*; it is not a civil program or sanction. See *Commonwealth* v. *Power*, 420 Mass. 410, 414-415 (1995), cert. denied, 516 U.S. 1042 (1996); *Commonwealth* v. *Durling*, 407 Mass. 108, 111 (1990). Cf. *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 343-344, 348 (2000).

Text and structure may thus suggest in some respects a criminal intent, but § 47 is not without indications of civil intent as well. The statute imposes a condition of probation, and while

---

[10]An offender might, for example, have had a single adult victim who is now deceased; have been convicted of possessing child pornography in his home; or have committed two acts of lewd and lascivious behavior on a public sidewalk. See G. L. c. 6, § 178C ("[S]ex offense" defined). In no case would an exclusion zone be relevant to monitoring the offender.

[11]Relying on *Smith* v. *Doe*, 538 U.S. 84, 104 (2003), the dissent argues that the statute's burden on all sex offenders, for the duration of their probationary sentence and without regard to present dangerousness, has no bearing on the statute's intended denomination as punitive or civil. *Post* at 576-577. The dissent's reliance on *Smith* is doubly misplaced. First, *Smith* v. *Doe* deals with sex offender registration, which the United States Supreme Court explicitly distinguished from the greater restraint imposed by probation or supervised release. *Smith* v. *Doe, supra* at 101. Second, the part of *Smith* v. *Doe* relied on by the dissent discusses punitive *effects*, a very different analysis; by the time the Court reached the issue of punitive effects, it had already determined that Alaska's sex offender registry law was explicitly civil in intent, based entirely on factors lacking in the present case. *Id.* at 93-96.

probation is a type of criminal sentence with goals that include punishment, deterrence, and retribution, "[t]he primary goals of a probationary sentence are rehabilitation of the probationer and protection of the public." *Commonwealth* v. *Power*, 420 Mass. at 414. Rehabilitation and public protection may suggest more of a civil than a criminal orientation.[12] In any event, the text of § 47 being silent as to the statute's intended categorization as criminal or civil, we conclude that consideration of the Legislature's intent by itself does not offer a clear guide in this case. Cf. *Smith* v. *Doe*, 538 U.S. at 110 (Souter, J., concurring in judgment) (concluding that indications whether Alaska's sex offender registration law was civil or punitive were "in rough equipoise"); *id.* at 114-115, 116-118 (Ginsburg, J., dissenting) (agreeing with Justice Souter that whether Alaska's registration law was intended to be regulatory or penal was "unclear"). Accordingly, we consider the punitive effects of § 47 on sex offenders serving probationary sentences. Because this is not a case where we are asked to "reject the legislature's manifest intent," *Kansas* v. *Hendricks*, 521 U.S. 346, 361 (1997), or " 'negate [the State's] intention' to deem [the statutory scheme] 'civil,' " *Smith* v. *Doe, supra* at 92, quoting *Kansas* v. *Hendricks, supra*, we evaluate the punitive effects of the GPS requirement without placing a heightened burden on the defendant. See *Smith* v. *Doe, supra* at 107 (Souter, J., concurring in judgment); *id.* at 115 (Ginsburg, J., dissenting), citing *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963). Cf. *Doe* v. *State*, 189 P.3d 999, 1008 n.62 (Alaska 2008) ("imposing a heightened presumption requiring 'clearest proof' of punitive effect could threaten rights protected by the Alaska

---

[12]The dissent argues that, because "[t]he *principal* goals of probation itself are the rehabilitation of the probationer and the protection of the public" (emphasis in original), we should conclude that the Legislature affirmatively intended to denominate § 47 a civil regulation. *Post* at 574. While it is true that probation has rehabilitative and protective purposes (as all punishment does, to some extent), it is nevertheless a punishment. See *Commonwealth* v. *Power*, 420 Mass. 410, 414-415 (1995), cert. denied, 516 U.S. 1042 (1996). The dissent does not suggest, nor can it, that a statute imposing a mandatory period of probation for a crime could be applied retroactively. Cf. *Commonwealth* v. *Talbot*, 444 Mass. 586, 597 (2005). We do not disagree with the dissent that "[d]etermining the most effective way to control problems affecting public safety is left to the Legislature." *Post* at 574. However, where the Legislature chooses to control a problem through punitive means, its solution must be applied prospectively.

Constitution and might be inconsistent with the responsibilities of this court").

In *Smith* v. *Doe, supra,* the United States Supreme Court, in analyzing the Alaska sex offender registration law, referred to the seven factors listed in *Kennedy* v. *Mendoza-Martinez,* 372 U.S. at 168-169 (*Mendoza-Martinez* factors), as "useful guideposts" in determining whether a sanction is punitive in effect. *Smith* v. *Doe,* 538 U.S. at 97, quoting *Hudson* v. *United States,* 522 U.S. 93, 99 (1997). See *Powers* v. *Commonwealth,* 426 Mass. 534, 539 & n.9 (1998) (acknowledging, although not fully applying, *Mendoza-Martinez* factors). Cf. *Bruno,* 432 Mass. at 502 n.12. The seven factors or guideposts are:

> (1) "whether the behavior to which [the sanction] applies is already a crime";
>
> (2) "whether it comes into play only on a finding of scienter";
>
> (3) "[w]hether the sanction involves an affirmative disability or restraint";
>
> (4) "whether its operation will promote the traditional aims of punishment — retribution and deterrence";
>
> (5) "whether it has historically been regarded as a punishment";
>
> (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and
>
> (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Kennedy* v. *Mendoza-Martinez,* 372 U.S. at 168-169.[13],[14]

The first four of these factors by themselves establish that the

---

[13]We place the factors in the order we will discuss them, rather than in the order they appear in *Kennedy* v. *Mendoza-Martinez,* 372 U.S. 144, 168-169 (1963) (*Mendoza-Martinez*).

[14]The dissent begins its analysis of punitive effects by stating the position that the final two *Mendoza-Martinez* factors are dispositive, "absent an express showing of an intent to punish." *Post* at 577. This view, which the dissent supports with a reference to Justice Rehnquist's opinion for the Court in *Schall* v. *Martin,* 467 U.S. 253, 269 (1984), would effectively overrule

GPS requirement has a pronounced punitive effect. The first and second ask whether the sanction "comes into play only on a finding of scienter" and "whether the behavior to which it applies is already a crime" — questions that together consider whether the sanction is administered as a criminal penalty, that is, in response to criminal conduct. In imposing GPS monitoring as a mandatory condition of a probationary sentence for convicted sex offenders, § 47 more than meets this standard. The GPS requirement applies *only* to those persons who commit and are convicted of certain crimes; it applies to *every* person who is convicted of those crimes and receives a probationary term as part of the criminal proceeding's disposition; and it applies for the precise duration of the probationary sentence imposed.[15] A sanction bearing these qualities, if it also imposes a significant limitation on liberty, carries a strong presumption of punishment.[16] See *Smith* v. *Doe*, 538 U.S. at 112 (Stevens, J., dissenting); *id.* at 115-116 (Ginsburg, J., dissenting) (sanctions were punitive where requirements were "comparable to conditions of supervised release or parole," and triggered by past crime alone rather than current dangerousness).

Limitation or burden on liberty is the subject of the third

*Mendoza-Martinez.* The Supreme Court has not applied *Schall* v. *Martin, supra,* in such a fashion. See *Smith* v. *Doe, supra* at 97-105 (considering all seven *Mendoza-Martinez* factors in ex post facto analysis of sex offender registry law explicitly denominated civil). Moreover, it is not correct to suggest, as the dissent does, that the Supreme Court has determined that "*the* most important" of the *Mendoza-Martinez* factors is whether the statute may be rationally connected to a nonpunitive purpose (emphasis added). See *post* at 580. In *Smith* v. *Doe, supra,* the Court described this factor as "a [m]ost significant factor" in connection with its analysis whether the Alaska sex offender registration statute violated the ex post facto clause. *Id.* at 102. It went no further.

[15]It is true that the GPS requirement will not apply to offenders whom sentencing judges choose not to sentence to a term of probation. The discretionary nature of the sanction does not remove it from the realm of punishment, however. A sentence imposing incarceration itself is often discretionary, and is certainly so in the case of the defendant's crime of indecent assault and battery on a child. See G. L. c. 265, § 13B.

[16]By way of analogy, a statute expanding the length of *time* that probation must run would clearly be punitive. Cf. *Commonwealth* v. *Talbot*, 444 Mass. 586, 597 (2005) ("Lifetime community parole constitutes 'an enhanced penalty for sex offenders,' " and therefore cannot be imposed ex post facto). A statute expanding the *burden* imposed during the time probation is to run is punitive for similar reasons.

*Mendoza-Martinez* factor, which asks "[w]hether the sanction involves an affirmative disability or restraint." The GPS device burdens liberty in two ways: by its permanent, physical attachment to the offender, and by its continuous surveillance of the offender's activities. As to the permanent, physical attachment to the offender, our observations about the Commonwealth's statutory sex offender registration system is instructive. We have said that the registration requirement "presents an 'importantly distinct kind of constitutional danger,' because it 'forces an action on the person required to register. It is a continuing, intrusive, and humiliating regulation of the person himself.' " *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 792 (2008), quoting *Doe* v. *Attorney Gen.*, 426 Mass. 136, 149 (1997) (Fried, J., concurring). As "continuing, intrusive, and humiliating" as a yearly registration requirement might be, a requirement permanently to attach a GPS device seems dramatically more intrusive and burdensome. There is no context other than punishment in which the State physically attaches an item to a person, without consent and also without consideration of individual circumstances, that must remain attached for a period of years[17] and may not be tampered with or removed on penalty of imprisonment. Such an imposition is a serious, affirmative restraint.[18]

The intended function of the GPS device, continuous reporting of the offender's location to the probation department, also represents an affirmative burden on liberty. While GPS monitor-

---

[17]As the defendant's case shows, the term of probation in sex offense cases may be quite long; he was initially sentenced to twenty-five years of probation. Cf. G. L. c. 6, § 178H (*a*); G. L. c. 127, § 133D½ (violation of sex offender registration requirement by certain offenders punishable by parole supervision for life, including GPS monitoring).

[18]To the extent that the ankle bracelet portion of the GPS device is potentially visible to the public, it may have the additional punitive effect of exposing the offender to persecution or ostracism, or at least placing the offender in fear of such consequences. Cf. *Smith* v. *Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., dissenting) (affirmative restraint established by "profound humiliation and community-wide ostracism" of sex offender registry); Note, Who Are the People in Your Neighborhood? Due Process, Public Protection, and Sex Offender Notification Laws, 74 N.Y.U. L. Rev. 1451, 1467-1469 (1999) (describing acts of violence against registered sex offenders). Cf. also N. Hawthorne, The Scarlet Letter 58 (1871) ("Ah, but . . . let her cover the mark as she will, the pang of it will be always in her heart").

ing does not rise to the same level of intrusive regulation that having a personal guard constantly and physically present would impose, it is certainly far greater than that associated with traditional monitoring.[19] And the impact of such intrusion is of course heightened by the physical attachment of the GPS bracelet, which serves as a continual reminder of the State's oversight.

The GPS requirement thus places significant restraints on offenders. While these liberty burdens, as is true of probation generally, may serve a goal of rehabilitation, the GPS requirement and its burdens — again like probation generally — also satisfy the fourth *Mendoza-Martinez* factor, by "promot[ing] the traditional aims of punishment — retribution and deterrence." *Kennedy* v. *Mendoza-Martinez*, 372 U.S. at 168. See *Commonwealth* v. *Power*, 420 Mass. at 415.

We briefly discuss the remaining three *Mendoza-Martinez* factors. The fifth factor asks "whether [the sanction] has historically been regarded as a punishment." While there is no historical version of the GPS device (it is not the same as a ball and chain, for example, any more than it is the same as a weekly reporting requirement to the probation department), there are many historical cases where those convicted of a crime were required to wear some item for the length of their sentence, or suffer some long-term modification to their bodies. Such requirements are consistently viewed as punitive.

---

[19]Section 47 creates an additional affirmative disability or restraint by requiring the Commissioner of Probation to "establish defined geographic exclusion zones including, but not limited to, the areas in and around the victim's residence, place of employment and school and other areas defined to minimize the probationer's contact with children, if applicable." The record does not specify what exclusion zones, if any, were applied to the defendant, so it is difficult to evaluate the extent of this burden. However, such exclusion zones could dramatically limit an offender's freedom of movement. See, e.g., Towns Push Sex Offender Limits, Boston Globe, June 15, 2008 (over ninety per cent of Weymouth within 1,500 feet of school, park, or daycare center); Levenson, Sex Offender Residence Restrictions: Sensible Crime Policy or Flawed Logic?, 71 Fed. Probation 2, 4 (2007) (near-total lack in urban areas of residences not within 1,000 feet of school, park, or childcare center). Cf. *Doe* v. *Schwarzenegger*, 476 F. Supp. 2d 1178, 1181 (E.D. Cal. 2007) (applying sex offender residency law retroactively "would raise serious ex post facto concerns"). A geographic exclusion zone, in contrast to a residency prohibition, not only prevents offenders from living in areas that would allow contact with children, but even from passing through such areas while driving to another destination.

The final two *Mendoza-Martinez* factors are respectively "whether an alternative purpose to which [the sanction] may rationally be connected is assignable for it" and "whether [the sanction] appears excessive in relation to the alternative purpose assigned." The GPS requirement, with its instruction to designate exclusionary zones that are off limits to the sex offender, supports the rational purpose of keeping offenders away from their past victims and, more generally, the purpose of limiting opportunities for reoffense. The sanction appears excessive, however, to the extent that it applies without exception to convicted sex offenders sentenced to a probationary term, regardless of any individualized determination of their dangerousness or risk of reoffense. See *Smith* v. *Doe*, 538 U.S. at 116-117 (Ginsburg, J., dissenting) (sanction excessive in relation to nonpunitive purpose, where keyed to offense rather than offender's particularized risk of reoffense).

Weighing these factors together, we conclude that, as a result of the substantial burden on liberty § 47 imposes as part of the sentence for certain crimes, the statute is punitive in effect. And because § 47 operates retroactively with respect to the defendant, its application to him is impermissible under the ex post facto provisions of the United States and Massachusetts Constitutions.

The fact that sentencing judges prior to the enactment of § 47 had the discretionary power to impose GPS monitoring as a condition of probation does not affect our analysis. It was settled long before § 47 was enacted that "[j]udges are permitted 'great latitude' in imposing conditions of probation . . . ." *Commonwealth* v. *Lapointe*, 435 Mass. 455, 459 (2001), quoting *Commonwealth* v. *Pike*, 428 Mass. 393, 402 (1998). A judge therefore does not implicate ex post facto provisions by exercising that discretionary power in an individual case. Cf. *Buckley* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 815, 818 (1985), quoting *Commonwealth* v. *McGovern*, 183 Mass. 238, 240 (1903) ("terms and conditions [of probation] may be subject to modification from time to time as a proper regard for the welfare, not only of the defendant but of the community, may require"). It is, however, quite a different matter for the Legislature to remove discretion from the judge by imposing a greater

minimum punishment than the crime previously required; such a law may only be applied prospectively. See *Lindsey* v. *Washington*, 301 U.S. 397, 400-402 (1937) (ex post facto clause barred application of amended law that changed discretionary maximum sentence of fifteen years to mandatory fifteen-year sentence to defendant who committed crime before effective date of law's modification); *Commonwealth* v. *Davis*, 380 Mass. 1, 15 (1980) ("legislation which would have the effect of changing a discretionary sentence to a mandatory one could not be validly enforced with respect to crimes antedating the law"). See also *Miller* v. *Florida*, 482 U.S. 423, 432-433 (1987) (application of new presumptive sentencing guidelines violated ex post facto clause, even though defendant could have received same sentence under old guidelines).

*Conclusion.* The order of the Superior Court requiring the defendant to be monitored by the probation department with a GPS tracking device during his probationary term is vacated, and the case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*

IRELAND, J. (dissenting, with whom Spina and Cowin, JJ., join). I agree with the court that the defendant was sentenced to probation after the effective date of the statute, G. L. c. 265, § 47, inserted by St. 2006, c. 308, § 8 (Act).[1] *Ante* at 562-563. I write separately because I disagree with the court's conclusion that the statute should be deemed penal and, therefore, that it would be a violation of the ex post facto clause to apply it to this defendant, who was convicted of committing a sex offense before the statute's enactment. *Ante* at 560, 572.

As the court notes, in determining whether a statute constitutes an ex post facto law, we must discern whether the Legislature

---

[1]In his memorandum of decision and order, the Superior Court judge held that the statute applied retroactively to sex offenders who were sentenced to probation before the statute's effective date. Because the defendant was placed on probation after the statute's effective date, I would leave to another day the issue whether the words "is placed on probation" applies to the day probation was imposed or when the probation commences.

intended the statute to be a civil remedy or a criminal penalty. *Ante* at 565. In its analysis, the court concludes, *ante* at 567, that it is not clear whether the Legislature intended the statute to be criminal or civil and, therefore, the defendant should be relieved of his burden to provide " 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Commonwealth* v. *Bruno*, 432 Mass. 489, 500 (2000), quoting *Kansas* v. *Hendricks*, 521 U.S. 346, 361 (1997). Although I agree with the court that the Act creating the statute contains both civil and criminal elements, I do not agree that the legislative intent is so unclear that we cannot conclude that the intent was regulatory and remedial.

General Laws c. 265, § 47, concerns a term of probation. The *principal* goals of probation itself are the rehabilitation of the probationer and the protection of the public. *Commonwealth* v. *Lapointe*, 435 Mass. 455, 459 (2001), citing *Commonwealth* v. *Pike*, 428 Mass. 393, 403 (1998). An important aspect of the statute is that it does not apply to all probationers, but only to those who have committed certain sex offenses, as defined in the sex offender registration law, G. L. c. 6, §§ 178C-178Q. Both the Legislature and this court have recognized that sex offenders present a serious threat to the public and have a high rate of recidivism. *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 789 (2008). *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 769 (2006). *Coe* v. *Sex Offender Registry Bd.*, 442 Mass. 250, 258-260 (2004). *Commonwealth* v. *Knapp*, 441 Mass. 157, 159, 164 (2004). Determining the most effective way to control problems affecting public safety is left to the Legislature. *Luk* v. *Commonwealth*, 421 Mass. 415, 429 (1995).

Although it is true, as the court states, *ante* at 566, that the statute lacks a statement of civil intent, is imposed only in the criminal context, is placed in the criminal code, and is uniformly imposed on every defendant who is placed on probation for certain sex offenses, I conclude that these elements alone are not dispositive of whether the Legislature's intent is so "unclear" as to relieve the defendant of his burden.

That a statute "may be 'tied to criminal activity' is 'insuf-

ficient to render the statute punitive.' " *Commonwealth* v. *Bruno*, *supra* at 501, quoting *Kansas* v. *Hendricks, supra* at 362. The location and labels of a statute do not by themselves transform a civil remedy into a criminal one. *Smith* v. *Doe,* 538 U.S. 84, 94 (2003) (*Smith*). Even if the objective of a statute is consistent with the purposes of a State's criminal justice system, "the State's pursuit of it in a regulatory scheme does not make the objective punitive." *Id.* In addition, a legislative restriction that is incident to the State's power to protect the public will be considered regulatory rather than punitive. *Smith, supra* at 93-94, quoting *Flemming* v. *Nestor,* 363 U.S. 603, 616 (1960). Protecting the public from sex offenders is a nonpunitive objective. *Smith, supra* at 102-103.

Here, even though the location of the Act under which this statute falls is the criminal code and the Act's title, "An Act increasing the statute of limitations for sexual crimes against children" could be read as criminal, one provision establishes criminal penalties for level three sex offenders who knowingly and willingly establish residence in certain convalescent or nursing homes or facilities for the mentally retarded. Another provision concerns a statute of limitations. See respectively St. 2006, c. 303, §§ 6, 9. Four provisions can be read as regulatory rather than criminal. See St. 2006, c. 303, §§ 1, 2, 3, 10 (reducing number of days for certain sex offender classification and registration requirements; raising fee). One section (§ 5) mandates deleting a subsection of G. L. c. 178H, § 3, concerning registration by homeless persons, and arguably is administrative in nature. The remaining three sections concern community parole supervision (§ 4) and GPS monitoring for parolees and probationers (§§ 7 and 8), which are tied, at least in part, to the offender's victims.

The Act's title references children. General Laws c. 265, § 47, itself (§ 8 of the Act), ties the global positioning system (GPS) requirement to the offender's victim by stating that the Commissioner of Probation must establish "geographic exclusion zones" that must include the "victim's residence, place of employment, school and other areas defined to minimize the probationer's contact with children, if applicable." This language clearly indicates that the Legislature's concern was protection of the victim. Moreover, although it does not have its own statement

of civil intent, the statute references G. L. c. 6, § 178C, for the definitions of sex offenders who fall under its purview. The preamble to the sex offender registry statute states that the statute's purpose is to protect the public. St. 1999, c. 74, preamble & § 1. This court has found that purpose to be remedial. *Doe* v. *Attorney Gen.*, 430 Mass. 155, 166, 168 (1999). The presumption that the Legislature is aware of the content of other statutes holds particularly true of statutes the Legislature specifically references. See *Thurdin* v. *SEI Boston, LLC*, 452 Mass. 436, 444 (2008); *Suliveres* v. *Commonwealth*, 449 Mass. 112, 116 (2007), citing *Commonwealth* v. *Callahan*, 440 Mass. 436, 440-441 (2003).

In addition, other laws that establish regulations for sex offenders who have finished serving their sentences have been deemed to be remedial, including the confinement of those persons determined to be sexually dangerous. *Commonwealth* v. *Bruno*, 432 Mass. 489, 501-502 (2000) (commitment of sexually dangerous persons remedial). See, e.g., *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 787-789 (2008) (noting that sex offender registry laws are generally regulatory); *Coe* v. *Sex Offender Registry Bd.*, 442 Mass. 250, 259-260 (2004), citing *Smith, supra* at 105 (posting information concerning level three sex offenders on Internet nonpunitive); *Opinion of the Justices*, 423 Mass. 1201, 1227 (1996) (proposed community notification of sex offender information regulatory and remedial).

Moreover, I do not agree with the court's conclusion that, because the statute applies to all sex offender probationers without regard to individual dangerousness, the statute is therefore criminal. *Ante* at 572. "The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make a statute punitive under the Ex Post Facto Clause." *Smith, supra* at 104.[2] "The risk of recidivism posed by sex offenders is 'frightening and high' "; "[w]hen convicted sex offenders reenter

---

[2]The court states, *ante* at 566 n.11, that my reliance on *Smith* v. *Doe*, 538 U.S. 84, 104 (2003) (*Smith*), is mistaken because, in the *Smith* case, in response to the reasoning of the lower court, the United States Supreme Court distinguished Alaska's sex offender registration requirement from probation, stating, "Probation . . . entail[s] a series of mandatory conditions and allow[s] the supervising officer to seek the revocation of probation . . . in case of

society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Id.* at 103, quoting *McKune* v. *Lile*, 536 U.S. 24, 33, 34 (2002). Here, therefore, the Legislature could decide that, of all probationers, those convicted of sex offenses have a substantial risk of recidivism and, accordingly, mandate the use of a tool that assists law enforcement in protecting the public while the offender is completing his sentence. *Smith, supra* at 103. Moreover, the United States Supreme Court has upheld other laws without a corresponding risk assessment. *Smith, supra* at 104, citing *Hawker* v. *New York*, 170 U.S. 189, 197 (1898), and *De Veau* v. *Braisted*, 363 U.S. 144, 160 (1960).

I conclude that the legislative intent was to establish a regulatory rather than criminal regime, and I would not relieve the defendant of his burden to show that the statute is so punitive as to be penal. However, even assuming the Legislature's intent is not clear, I conclude that, on balance, this statute establishes a nonpunitive regime to protect the public.

This court's analysis of the ex post facto clause has been identical to that of the United States Supreme Court. *Commonwealth* v. *Bruno*, 432 Mass. 489, 492 n.4 (2000). The Supreme Court has stated that, where there is no conclusive evidence of legislative intent, courts should analyze the statute on its face using the seven factors listed in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963). However, absent an express showing of an intent to punish, the determination whether a statute is so punitive in purpose and effect that it negates any remedial purpose turns on the last two *Mendoza-Martinez* factors, whether the statute is rationally related to a purpose other than punishment and whether the effects are excessive in rela-

infraction" but, in the case of registration, failure to report results in criminal prosecution where the "proceeding [is] separate from the individual's original offense." *Id.* at 102. The Court's discussion of probation in the *Smith* case is not dispositive here. Specific conditions of probation were not at issue in the case. In addition, the Court did not say that any statute that imposes a condition of probation, the violation of which would result in a proceeding related to the defendant's original offense, is per se a violation of the ex post facto clause.

Moreover, the Court's determination that a legislature can identify classes of persons to regulate without violating the ex post facto clause is based on the police powers of a State. *Id.* at 104, quoting *Hawker* v. *New York*, 170 U.S. 189, 197 (1898). The *Hawker* case involved a law excluding convicted felons from practicing medicine. *Hawker* v. *New York, supra* at 190, 192-193.

tion to that purpose. See *Schall* v. *Martin*, 467 U.S. 253, 269 (1984), quoting *Kennedy* v. *Mendoza-Martinez*, *supra*; *Bell* v. *Wolfish*, 441 U.S. 520, 538 (1979). See also *Smith*, *supra* at 102-103 (stating that "most significant" factor in determining that Alaska's sex offender registration statute was not ex post facto law was its rational connection to nonpunitive purpose of protecting public from sex offenders).

Furthermore, this court has noted that, although the *Mendoza-Martinez* factors can be useful guidelines, without weight and priorities assigned to them, there are risks that the factors will be unmanageable for their "indefiniteness." *Opinion of the Justices*, 423 Mass. 1201, 1222 (1996). The court also noted, however, that it considered that the more harshly a statute bears on an individual, the more closely it resembles a criminal sanction, and the more urgent the regulatory concern and the more soundly the statute is rooted in fact and not conjecture, the more regulatory the aim. *Id.* at 1224.

Although our analysis of the ex post facto clause is identical to that of the Supreme Court, here, relying on dissenting opinions in *Smith*, this court concludes that the finding of scienter and whether the behavior to which the statute applies is a crime weigh heavily in favor a determination of punitive effect. *Ante* at 569. However, in the *Smith* case, the majority stated that its assessment of Alaska's sex offender registration law was not aided by these two factors because the scheme applied to past conduct that was and is a crime. *Smith*, *supra* at 105. In any event, I conclude that the statute does not create culpability for prior conduct; nor does it require a finding of scienter to subject a person to the statute's terms.

The determination whether the statute is an affirmative restraint must be made in the context that all probation has a supervisory element to ensure that the probationer abides by its terms. *Commonwealth* v. *Taylor*, 428 Mass. 623, 626 (1999). In any event, restraint is not automatically punitive, and even nonpunitive confinement to protect the public is a nonpunitive, legitimate government objective. *Kansas* v. *Hendricks*, 521 U.S. 346, 363 (1997). Indeed, the Court has upheld pretrial confinement as nonpunitive, where the objective was to ensure that a potentially dangerous defendant appeared for trial. See *Schall* v. *Martin*,

*supra* at 272-274; *Bell* v. *Wolfish, supra* at 536-537 (restraint not necessarily punitive).

Here, the probationer must wear the device only during the term of his probation, a condition that is limited in duration and which already has restrictions that are related to the supervisory responsibility of the probation department.[3] See *Commonwealth* v. *Durling*, 407 Mass. 108, 111 (1990). Although a probationer may be restricted from some geographic areas related to public safety, the statute does not otherwise prohibit the probationer from going about his or her daily business while on probation. Moreover, although entrance into an exclusion zone is a violation of probation, it is not a crime. See *Commonwealth* v. *Wilcox*, 446 Mass. 61, 65 (2006).

Concerning whether the statute promotes the traditional aims of punishment, retribution, and deterrence, the statute would function as a deterrent. However, statutes that have a deterrent or retributive effect may be regulatory, and burdens on the defendant that result from their imposition "only violate the ex post facto clauses . . . if they must be deemed punishment." *Opinion of the Justices, supra* at 1226. Virtually all civil regimes have some deterrent effect. *Id.* at 1222-1223, citing *United States* v. *Ursery*, 518 U.S. 267, 284 n.2 (1996). "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Smith, supra* at 102, quoting *Hudson* v. *United States*, 522 U.S. 93, 105 (1997).

It is true, as the court points out, *ante* at 570 n.18, that the GPS device could be seen by the public,[4] and retribution could

---

[3]I acknowledge that, as illustrated by this defendant's first probation of twenty-five years for a sexual offense against a child, probation may be for a long duration. The length of probation is within the discretion of the judge. See *Commonwealth* v. *Power*, 420 Mass. 410, 413-414 (1995), cert. denied, 516 U.S. 1042 (1996), citing *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993) (judge has great latitude in sentencing where sentence imposed is within limits of applicable statute). I also note that, elsewhere, the Legislature has determined that offenders who commit certain sex crimes are subject to more stringent requirements. See, e.g., G. L. c. 6, § 178K (2) (*d*), prohibiting offenders who commit a sex offense involving a child or a sexually violent offense from process whereby sex offender could be relieved "of any further obligation to register."

[4]The statute itself indicates that the terms of the GPS monitoring will be administered by the Commissioner of Probation and that the commissioner

be visited on the probationer. However, retribution must be the purpose of the statute in order for it to be deemed punitive. *Opinion of the Justices, supra* at 1227. We have held that posting information about level three sex offenders on the Internet, although it could invite retribution, served a public safety goal and was not punitive. *Coe* v. *Sex Offender Registry Bd.*, 442 Mass. 250, 259-261 & n.9 (2004), citing *Smith, supra* at 91, 105 (actual audience are those who would be offenders' potential victims). Unlike posting information identifying certain sex offenders on the Internet, here, it is not at all certain that the public would know that the reason the offender was wearing the GPS device was because he was a sex offender, if they were to see the device at all. See generally *Commonwealth* v. *Donohue*, 452 Mass. 256, 257, 269 (2008) (sheriff has authority to discharge or parole prisoners in special program where they wear GPS device); *Commonwealth* v. *Morasse*, 446 Mass. 113, 113-114 (2006) (GPS used for pretrial home confinement of defendant indicted on various charges); *Commonwealth* v. *Hector H.*, 69 Mass. App. Ct. 43, 44 (2007) (juvenile found delinquent by reason of trespassing placed on probation with electronic monitoring for one year).[5]

Turning now to the most important of the *Mendoza-Martinez* factors, I agree with the court that the "GPS requirement, with its instruction to designate exclusionary zones that are off limits to the sex offender, supports the rational purpose of keeping offenders away from their past victims and, more generally, the purpose of limiting opportunities for reoffense." *Ante* at 572. However, I do not agree with the court's conclusion that because it applies, without exception, to convicted sex offenders without regard to whether they are individually dangerous, the burden on the probationer is excessive in relation to the purpose of protecting the public. *Id.*, citing *Smith, supra* at 116-117 (Ginsburg, J.,

and one local police department would be informed of a probationer's whereabouts only if a violation occurs. G. L. c. 265, § 47. There is nothing in the statute that authorizes making public any information concerning a probationer.

[5] As the court notes, there is no historical version of this GPS statute to assist in resolving whether a GPS has been historically regarded as punishment. *Ante* at 571. See *Smith* v. *Doe*, 538 U.S. 84, 97-99 (2003) (rejecting argument that dissemination of sex offender information over Internet is similar to historic shaming or branding punishments that involved setting up direct confrontation between offender and public).

dissenting). As discussed, the majority in the *Smith* case stated that to treat sex offenders as a class is not punitive where it is rational to conclude that there is a high rate of recidivism among sex offenders. *Smith, supra* at 103-104. This court has stated that recidivism among sex offenders is high and that protection of the public is a compelling State interest. See *Coe* v. *Sex Offender Registry Bd.*, 442 Mass. 250, 259-260 (2004); *Commonwealth* v. *Knapp*, 441 Mass. 157, 159, 164 (2004). See also *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 789 (2008); *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 769 (2006). Moreover, "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aim it seeks to advance . . . [unless] the nonpunitive purpose is a 'sham or mere pretext.' " *Smith supra* at 103, quoting *Kansas* v. *Hendricks*, 521 U.S. 346, 371 (1997) (Kennedy, J., concurring). Here, there is no evidence of sham or pretext. See *Luk* v. *Commonwealth*, 421 Mass. 415, 422 (1995) (sanctions are punitive only if they cannot be explained by nonpunitive purpose).

Given that the urgency of the regulatory concern of protecting the public from sex offenders has been found by both the Legislature and this court, and that here the statute covers sex offenders who have yet to serve their sentences, I conclude that on balance this statute is regulatory, despite the burdens on the sex offender probationer, and thus does not violate the ex post facto clause. See *Opinion of the Justices, supra* at 1223-1224 (court should weigh statute's harshness on individual against urgency of regulatory concern).[6]

---

[6]Because I conclude that this statute does not violate the ex post facto clause, a due process analysis is necessary because it applies to a crime for which the defendant was convicted before its enactment. See *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.*, 450 Mass. 780, 788 (2008), quoting *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 191 (1978) (court examines statute by considering nature of public interest that motivated Legislature to enact it, nature of rights affected, and extent or scope of statutory effect). I conclude that the statute does not violate a probationer's due process rights. I have already discussed the compelling nature of the public interest and the extent and scope of the effect on the probationer during his term of probation. Concerning the nature of the probationer's rights, I conclude that they do not outweigh the compelling public interest where probationers have a limited liberty interest. *Commonwealth* v. *Wilcox*, 446 Mass. 61, 64 (2006).